Chamberlain *v.* Fox Coal and Coke Co.

CHAMBERLAIN *v.* FOX COAL AND COKE CO.

(*Knoxville.*    October 17, 1892.)

1. ATTORNEY.    *Competent witness to prove client's declarations, when.*

The vendor's attorney is a competent witness on behalf of his client to prove the representations made by the latter pending negotiations for the sale of land, in a suit brought by the vendee for rescission of the contract of sale for alleged fraudulent misrepresentations of the vendor.

2. RESCISSION.    *Not granted for misrepresentation, when.    Example.*

Rescission of contract for sale of land will not be granted upon the vendee's application for alleged misrepresentations of the vendor as to the character, capacity, or quality of the property sold, unless it clearly appears that the misrepresentation was concerning a material matter, and operated as a material inducement to the purchase.    The vendor's representation, as to the daily output of the coal-mine involved in this cause, is not material under the facts of this case.

3. SAME.    *Not granted for vendor's failure to disclose pending suit, when.*

Rescission of contract for sale of land will not be granted upon the vendee's application, because of the vendor's failure to disclose the existence of a pending suit for the possession of the land, where the vendor's possession could not have been lawfully disturbed, in any event, by the result of that suit—it being, as regards the vendor *res inter alios acta.*

4. SAME.    *Same.*

And the result is the same, as regards rescission, even if the vendee is subsequently evicted by the unlawful execution of the writ of possession in that suit.

5. FORCIBLE ENTRY AND DETAINER.    *Effect of recovery against employe of possessor.*

The party in peaceable possession of real estate cannot be lawfully dispossessed by writ issued under judgment in forcible entry and detainer suit brought against a few of his numerous employes engaged as

common laborers, but not residing, on the premises.   Neither can his employes of the same or a higher grade, who are not sued, be dispossessed by such writ.

Cases cited: Davidson *v.* Phillips, 9 Yer., 95; Elliott *v.* Lawless, 6 Heis., 125.

6. RES ADJUDICATA.   *Does not exist, when.*

And judgment against the employe in such suit is not binding upon the employer, although the latter knew of the existence of the suit, and assisted the employes in its defense by employment of counsel and otherwise.

Case cited and approved: Boles *v.* Smith, 5 Sneed, 105.

---

### FROM HAMILTON.

---

Appeal from Chancery Court of Hamilton County. T. M. McCONNELL, Ch.

COOKE, FRAZIER & SWANEY and M. H. CLIFT for Chamberlain.

PRITCHARD, SIZER & THOMAS for Company.

LURTON, J.   The complainant seeks a rescission of a contract of sale of a leasehold estate in a tract of 5,700 acres, upon which is situated a valuable coal-mine.   The conveyance also embraced certain movables, such as miners' houses, coal-cars, rail and tramways, screens, scales, mining tools, and also certain rights of way over adjacent lands. The conveyance was made by the Fox Coal and Coke Company, a Tennessee corporation, which

was the assignee of a lease, originally made in 1885 to other parties, for a term of ninety-nine years. The consideration expressed in the deed is $57,500, and the assumption by the vendee of the rents, payable to the original lessors and owners of the fee; and upon the further consideration that the vendee should expend, within one year, the sum of ten thousand dollars in permanent improvement of the mines. Twenty-five hundred dollars was paid in cash, and for the remainder notes were executed, maturing at different dates.

Upon the pleadings and proof, the Chancellor, upon final hearing, dismissed the bill. The complainant has assigned as error the action of the Chancellor in not finding, upon the evidence, that a fraud was practiced upon complainant, by misrepresentations made to induce the sale, concerning the daily output of the mines while being operated by the vendor. We do not think the Chancellor erred in this respect. Complainant and one Hood do testify that Mr. Line, the secretary of the defendant company, did represent that the output had averaged between two hundred and two hundred and fifty tons per day. Mr. Line very positively denies the statement. He is confirmed, as to what passed between himself and Mr. Chamberlin at the time the sale was consummated, by the evidence of Mr. Pritchard, who was present during the negotiations as counsel for the Fox Coal and Coke Company. Whatever question may be made upon the competency of the evidence of

Mr. Pritchard as to subsequent transactions about which he testifies, there can be no doubt but that, at the time these negotiations for the sale were pending, Mr. Pritchard represented the vendor alone, and was competent, when called by his client, to say what representations had or had not been made. The representations to the witness, Hood, are laid at a different time and place.

Assuming both Mr. Hood and Mr. Line to be equally credible witnesses, complainant's case, on this point, must fail, because not supported by the weight of proof. To strengthen this view, there is the added circumstance that complainant had sent two competent persons to examine the property, and this fact, taken with the positive testimony of both Mr. Line and Mr. Pritchard, indicates that complainant was fully advised as to the character and prospects of this property by his agents, and acted upon their reports to him.

The materiality of the alleged misrepresentation does not clearly appear. Whether defendants had obtained an output of from forty to fifty tons per day, or two hundred tons per day, might depend entirely upon the force employed by them, and not be a consequence of the want of capacity in the mines to put out the larger quantity with an adequate force. That the property is very valuable as a coal property is freely admitted by Mr. Hood, complainant's agent for the examination of the property. This witness says that "taking the report of Mr. Lawson as a basis" (an expert sent

to examine and report upon the property by complainant), "I should say it was a large property, and capable of turning out a large quantity of coal."

To rescind a contract of sale upon the ground of a misrepresentation as to the character, capacity, or quality of the property sold, it ought to be made to clearly appear that such misrepresentation was concerning a material matter, and operated as a material inducement to the purchase.

The next insistence of complainant was, and is, that the defendant company were guilty of such fraudulent concealment of a material fact affecting its title and right of possession as entitles him to a rescission. The facts upon which this allegation rests are substantially these: In 1873 a grant was issued by the State to one B. F. Walker, for a portion of the lands covered by the leasehold estate conveyed to complainant. In 1881 Walker filed a bill in the Chancery Court against the Fox heirs, who are the original lessors under whom the Fox Coal and Coke Company claimed. The object of this bill was to remove the Fox title as a cloud upon the Walker title, to stay waste, and to eject the Fox heirs from the land covered by the grant to Walker. The Fox heirs claimed under a grant much older than that held by Walker, but were unable to connect themselves with it, for the reason that one link in their chain of title was a Sheriff's deed, which they did not support with a record showing judgment and

2—8 P

levy. Neither Walker or the Foxes had had such continuous, exclusive, adverse possession of the lands covered by both grants as to vest a title under the statute of limitations. Walker failed in his suit, however, because of the effect of the older grant as an outstanding superior title. This suit was finally decided in 1886, and the opinion of this Court, reported in 85 Tenn., 154 *et seq.*, shows fully the facts as to the respective titles and possessions and the ground upon which Walker failed to recover the land claimed by him in that suit.

After losing his ejectment suit, Walker at once instituted another suit, for the purpose of obtaining possession from the Foxes, or those claiming under them, of the lands covered by his grant. For this purpose he brought an action at law of forcible entry and detainer before a Justice of the Peace of Rhea County. Instead of making the Foxes, or their then lessees, Line and Winchester, defendants, he instituted his suit against three *employes* of the lessees, and alleged that they—Davis, Blevins, and Travis—had wrongfully and forcibly entered upon his lands and deprived him of the possession. There was a judgment by the Justice in favor of Walker, and an appeal by the defendants to the Circuit Court. This is the suit which was pending at the time of the sale to complainant. Line and Winchester had in the meantime, and while the suit was pending, sold and assigned their lease to the defendant, the "Fox Coal and Coke Company."

The fact that this suit was pending was known to the vendor of complainant, and it did not communicate its pendency to the complainant. The contention of complainant is, that inasmuch as neither the Fox Coal and Coke Company nor its remote lessor had any such legal title as would support an action of ejectment to recover possession of the lands embraced by Walker's grant, that the concealment of the pendency of a suit which imperiled the possession of the coal-mines, which were altogether within the Walker claim, was such a fraudulent concealment of a material fact as amounts, in law, to a ground for rescission.

In explanation of the silence of the defendant concerning this suit, involving the rightfulness and legality of its possession, it having received the possession from Line and Winchester pending that suit, defendant says that it attached no importance to the suit, inasmuch as it had been advised by its counsel that Line and Winchester were not parties, and that the possession of Line and Winchester was not affected by its pendency, and that, as it claimed under them, it could not be dispossessed by any judgment in a suit wherein they were not concluded.

The important question upon this issue is as to the possible effect of Walker's suit upon the possession of the assignors of the lease. If the assignor could be ejected under a writ of possession issuing in that case, it would follow that complainant could likewise be ejected if he should

purchase pending the suit, and receive possession from parties or privies to the pending suit.

The facts appearing in this record, as to the possession of Line and Winchester, are substantially these: At the date of the beginning of Walker's action before the Justice, they, as lessees, had taken possession and opened up coal-mines within the Walker grant. From a bill filed by them to enjoin Walker's suit (but dismissed voluntarily, and hence without prejudice), which is filed as evidence in this cause by complainant, we find that they had a *numerous* force of hands engaged in and about the opening and operation of their coal-mines. *The defendants to Walker's suit were three of these hands.* The employes sued were not tenants of any part of the premises, and did not reside upon the disputed interlap, and had no interest whatever in the lease or in the mining operations. Neither of them was a manager, superintendent, or boss, and neither had any sort of control or authority, as representing the lessees, over the premises or over their fellow-servants. This, we think, is implied from the absence of any averment or evidence indicating the contrary, as well as from the affirmative evidence that they were *mining employes.* Under these facts, was the pending suit one which involved the possession of Line and Winchester? Were they and their other servants and employes liable to be ejected by a writ of possession issuing in that case against their three servants and employes, Davis, Travis, and Blevins?

Walker's suit did not involve title. It was purely a possessory suit, and was an action which cannot be resorted to as a substitute for an action of ejectment. 9 Yer., 95; 6 Heis., 125.

If the defendant in possession entered peacefully, and without collusion, and in his own right, though he have not the vestige of a title, he can defy even the true owner when sought to be ejected by this summary remedy.

The object of the remedy is to keep him in possession who first lawfully obtained it, and, all considerations of title aside, to restore to possession an occupant who has been forcibly excluded. Undoubtedly such an action will lie against any person actually in possession through force. It does not matter whether such person's possession be for himself or for another.

Were the defendants such persons actually in possession? If so, they might be excluded by means of this summary action. What was the extent of their possession? Was it co-extensive with the limits of the lease to Line and Winchester? If it was, then the plaintiff, by ejecting them, would be restored to the possession of his entire grant. But it seems too evident to need argument that three of a numerous force of hands engaged in operating extensive coal-mines cannot be said to have been in possession of the mines. How can it be then said that the right to remove them from the premises carried with it the right to remove their employers, their superiors,

their fellow-servants, none of whom were sued, and whose possession and right was equal,. if not superior, to that of those sued? If it be said that these defendants were exercising acts of dominion, and committing trespasses whenever they undertook to aid in the opening or operation of the mine, and that when so engaged they were persons actually in possession, it may be answered that all others engaged with them, were equally persons actually in possession. Such others so engaged were not the servants or agents of the persons sued, and could not, therefore, be ejected under the principle applicable when the judgment is against the employer of such servants.

Admitting that under a judgment against a few of a large number of such employes, the few actually sued might be ejected, yet, what is the Sheriff to do when he finds that many other persons not sued have the same kind of possession? Can he exclude them also? If so, upon what principle? It cannot be upon the ground that they are in possession *under* the defendants to his writ, for, demonstrably, this is not the fact. That all are alike servants and employes of a common master does not solve the difficulty, because that common master was not a defendant in the judgment. If the possession of all in a common employment is equal, then the possession of none can be disturbed who were not parties to the proceeding under which it is sought to disturb that possession. That all had a common employer, and that

Chamberlain v. Fox Coal and Coke, Co.

each and all were in possession under and for a common employer, does not make such privity as to conclude that employer or any of his servants not actually sued. The case is more like that of a common landlord having many tenants, each holding for himself a part of the premises. If a plaintiff choose to bring ejectment or forcible detainer against a part of these tenants, the judgment would only affect those sued, and there could be no dispossession of others of the same class, but holding independently, though under a common landlord. To use a homely illustration: If a few of many hands employed in a mill, or servants in a hotel, or pupils in a school-house, were sued in an action of forcible entry, brought for the purpose of recovering possession of the mill or the hotel or the school-building, and there was judgment against those made defendants, could it be pretended that, under such a judgment, the hotel or the mill or the school-house could be recovered? While a judgment against the owners of the mill or the hotel would authorize the ejection of such owners, as well as all of their agents, employes, and servants, yet the converse of this—that a judgment against a few of many such servants, agents, or employes, whose possession and occupancy was equal and common, would authorize the exclusion of their fellow-servants and their employers—would by no means follow. Such use of the action of forcible entry is an abuse of the remedy, and one that cannot be tolerated.

We are clearly of the opinion that the suit of Walker was not one which involved the right of Line and Winchester to the possession. They were not parties to the suit, and were not privies to those who were. We quite concur with the advice of counsel to defendant company that the suit of Walker was not a suit under which they might be dispossessed.

That Line and Winchester assisted these employes in the defense of the suit against them, by employing counsel or otherwise, is of no moment. It did not operate to make them parties. They might have obtained leave to be substituted as defendants, and then obtained the legal right to defend and appeal, and have thus been concluded. This they did not choose to do, and Walker did not choose to make them defendants. What they did in aid of the defendants creates no estoppel. This point has been expressly ruled in reference to an action of ejectment, which was against a tenant. The assistance, through counsel, rendered the tenant by his landlord was held not to conclude the landlord by way of *res judicata* or estoppel. *Boles* v. *Smith,* 5 Sneed, 105.

That the assignee of complainant was in fact subsequently ejected from these mines by a writ of possession issuing against Davis, Blevins, and Travis, is of no moment in this suit. If they were wrongfully ejected, as we have intimated, their remedy is against those who abused the process of the Court. That fact can cut no fig-

ure in a bill for rescission. No question upon the covenants in the deed to complainant has or can be made in this case, and none is decided.

We have treated complainant's case as if he had amended his bill and set up his re-acquirement of the title to this leasehold, and had been in position to tender back to defendants the interest acquired under the contract he seeks to rescind. We have deemed it best to meet the questions upon their actual merits, and determine the suit so far as a rescission or abatement of purchase-price was sought.

Affirm the decree of the Chancellor, with costs.