**HARROGATE CORPORATION,**
**Plaintiff/Appellee,**

v.

**SYSTEMS SALES CORPORATION,**
**Defendants/Appellant,**

and

**Unlimited Sales Systems & Services,**
**Inc., Defendant/Appellant.**

Court of Appeals of Tennessee,
Middle Section at Nashville.

Sept. 20, 1995.

Permission to Appeal Denied Feb. 5, 1996.

Donald S. Caulkins, Caulkins & Caulkins, Franklin, for appellant.

Steve Jordan, Yost and Robertson, Franklin, for appellee.

## OPINION

LEWIS, Judge.

Plaintiff Harrogate Corporation (Harrogate), brought this suit against two related corporate defendants, defendants/appellants Systems Sales Corporation, (SSC) and Unlimited Sales Systems & Services, Inc. (USS & S). Harrogate's action sought money and profits stemming from the sale of a computer system.

In 1991, the parties jointly agreed to purchase a Unisys computer and related equipment from a European seller. SSC then resold the computer to a California buyer. By agreement of the parties, SSC was to pay Harrogate fifty percent of the net profits of the sale. Harrogate contested SSC's distribution of profits and filed a complaint. Following a trial, the Chancellor awarded Harrogate a judgment of $71,923.24 plus post-judgment interest, as well as ordering SSC to fully account regarding the transaction with the California buyer.

The principle dispute among the parties is the amount of profits available to be divided. Specifically, the parties dispute certain expenses made by both sides and whether such expenses should be deducted from the proceeds of the sale pursuant to the their agreement.

The Chancellor specifically found 1) that Harrogate had legally assigned its contract rights to SSC on the express consideration that Harrogate be paid fifty percent of the profits on all equipment sold covered by the parties agreement; 2) that SSC did sell the computer for $650,000.00, and that the purchase price had been fully paid by the buyer and represented the gross proceeds of the transaction, and 3) that SSC had disbursed $100,000.00 to Harrogate as partial payment of Harrogate's share of the profit.

The parties are in conflict as to the issues appropriately before this court for review.

Defendants/appellants offer five potential issues for review, all asserting in one form or another that Harrogate has fraudulently concealed monies it received which would impact the net profits owing from the parties' agreement.

Harrogate responds by emphasizing that they successfully moved for summary judgment on these issues prior to trial, and also prevailed later when the court dismissed defendants/appellants Amended Counter–Complaint. Harrogate contends that because the trial court considered the matter and entered a judgment as to it, which the defendant never appealed, that defendants could not have re-litigated the issue by "merely changing their asserted theory of recovery and bringing the same facts back up." Harrogate contends that res judicata barred the defendants/appellants' attempts to re-argue the issue in its counter-complaint and that the trial court did not err in dismissing that part of the defendants' amended counter-complaint.

Finally, appellants contest whether the trial court properly directed a verdict on defendants' counter suit at the close of the defendants' proof. Presumably, the trial court directed a verdict for Harrogate because the defendant failed to establish a prima facie case of actual fraud against Harrogate. The Chancellor, in granting the directed verdict, told both parties that "this is a case where there is just no proof that [the appellant] is damaged without total speculation."

Appellants' issues two, three and five are as follows:

II. The court erred by not permitting the jury to hear evidence of fraud and damages relating to expenses allegedly in-

curred by the plaintiff who sought and received reimbursement for those expenses from the defendants.

III. The court erred by ruling that the $112,000.00 payment to Harrogate Corporation, and the circumstances surrounding such payment, could not be introduced by the defendants as evidence of fraud and damage at trial, and

V. The court erred by ruling that System Sales Corporation could not present evidence of the amount of money lost by System Sales Corporation due to the fraudulent acts of Harrogate Corporation.

Plaintiff recasts those issues as follows:

I. "Did the trial court err in dismissing in part the defendants' amended counter-complaint?"

We discuss the foregoing together.

At the October 1994 pre-trial hearing, the Chancellor dismissed SSC's amended counter-complaint in part on the basis that a portion of that amended counter-complaint had previously been decided and dismissed in January 1994 on the ground of partial summary judgment against SSC.

In its original answer, SSC counter-claimed that Harrogate had "received or claimed commissions and/or refunds from entities providing services related to [the parties' original purchase agreement with SSC] which affect the element net profits ..." Subsequent to the parties engaging in and having full opportunity to engage in pre-trial discovery, Harrogate moved for partial summary judgment on the original counter-complaint. Following the trial court's consideration of the entire record, the Chancellor granted summary judgment to plaintiff as to that portion of SSC's original counter-complaint which alleged that Harrogate received "commissions and/or refunds affecting the ultimate net profits." SSC did not appeal from that grant of partial summary judgment, nor has it raised the issue on appeal that the grant of partial summary judgment was error.

Notwithstanding the grant of partial summary judgment by the Chancellor, SSC subsequently moved to amend its counter-complaint to assert the same facts under a different theory of recovery. The court entered an order allowing the amended counter-complaint which added the following language: "Harrogate Corporation should be required to pay one-half (½) of the $112,-000.00 paid to Harrogate Corporation by the Institute for Resource Management as an offset to any profits claimed by Harrogate Corporation under purchase agreement number 0613911."

In October 1994 Harrogate lodged an amended answer with the court that added "new" counter-claim language. The trial court allowed the lodged answer to be filed on 13 October 1994. Harrogate simultaneously moved the court to dismiss that portion of SSC's amended counter-complaint in as much as the issue of the $112,000.00 paid to Harrogate by a third party had been properly before the court, briefed, and argued at the earlier hearing on partial summary judgment. Further, the court had previously granted Harrogate summary judgment as to this alleged issue of fraud.

The court, after considering Harrogate's amended answer to the amended counter-claim, and Harrogate's pre-trial motion to dismiss the amended counter-claim in part on a res judicata grounds and arguments of counsel at the pre-trial hearing on October 13, dismissed that portion of SSC's amended counter-complaint seeking one-half of $112,-000.00 as an offset against what SSC owed Harrogate. The Chancellor held that the matter of the $112,000.00 as an offset had been previously considered by the court and ruled on as the grant of partial summary judgment.

The defendants/appellants continue to argue that notwithstanding the court's dismissal of that part of the counter suit that SSC should still have been allowed to proceed at trial to put on evidence and argument and maintain the counter-claim for an offset equaling one-half of the $112,000.00.

The trial court had dismissed in part SSC's amended counter-complaint as having already decided by partial summary judgment. Whether the trial court erred or not depends on the proper res judicata effect of summary judgment.

In this state, res judicata operates to bar a claim when a prior judgment in an action between the same parties on the same cause of action concludes not only the facts actually litigated but the facts pertaining to that issue that might have been brought forth and litigated. *Gregory v. Gregory,* 803 S.W.2d 242, 244 (Tenn.App.1990).

While a denial of summary judgment is not an adjudication on the merits and has no res judicata effect, the granting of summary judgment is deemed conclusive of all issues reached and decided by such summary judgment. *Galbreath v. Harris,* 811 S.W.2d 88, 91 (Tenn.1990); *see Disney v. Celotex Corp.,* 588 F.Supp. 1317, 1318–19 (E.Tenn.1984); *see also Fleming v. American Capital Corp.,* 1 O.O.3d 265, 266 (Ohio App. Franklin Co. 1976), in which it was held that an unappealed, unreversed summary judgment represents a final determination of the rights of the parties of the claim involved. Summary judgment is the final judgment as to all claims encompassed by it and bars another action between the same parties for the same cause. *Ohio Nat'l Life Ins. Co. v. U.S.,* 922 F.2d 320, 325 (6th Cir.1990). Summary judgment resolves the issue treated on their merits and is a final judgment for purposes of res judicata. *Peregoy v. Amoco Prod. Co.,* 742 F.Supp. 372, 376 (E.D. Texas 1990); *Associated General Contractors of Mass. v. Boston District Council of Carpenters,* 642 F.Supp. 1435, 1439 (D.Mass.1989).

Systems Sales briefed and fully argued at the summary judgment hearing any question of the $112,000.00 payment received by Harrogate and on that issue System Sales was unsuccessful. System Sales subsequent attempt to re-raise the same issue in a later amended complaint is properly barred by principles of *res judicata.* The Chancellor did not err in dismissing pre-trial that part of SSC's amended counter-complaint concerning the $112,000.00 issue. The defendant/appellant's second, third and fifth issues are without merit.

We next discuss defendant/appellant's issues one and four as follows:

I. The trial court erred in dismissing the counter-claim of the defendants for lack of evidence of fraud and damages.

IV. The court erred by ruling that there was no proof that System Sales Corporation was damaged by the actions of Harrogate Corporation and by ruling that there was no proof that the actions of Harrogate Corporation constituted actionable and compensable fraud.

Plaintiffs restate that issue as: "Did the trial court err in directing a verdict on the defendant's counter suit at the close of the defendant's proof?"

We discuss these issues together.

There was no dispute as to the contract purchase price of $315,000.00 for the computer equipment, and no dispute existed that SSC had received payment in full of $650,000.00 for the computer equipment. The only real issues were what offsets or deductions should properly be chargeable to the parties' gross profit in order to arrive at the net profit to be divided between the parties and, two, the issue of the accounting due Harrogate from SSC for Harrogate's share of the profits. There was little or no dispute concerning Harrogate's case against the defendants. The real dispute was whether there was concern SSC's claims for offset of Harrogate's alleged "fraud, concealment, and misrepresentation."

Because SSC had asked for a jury on the offset issues the Chancellor suggested the parties agree that a proper order of proof was to impanel the jury and let the counter-plaintiff proceed first with its "fraud" case. Accordingly, SSC proceeded to put on its entire case in chief, which consisted of two witnesses, the president of Harrogate and

the president of SSC. SSC put on its proof and Harrogate declined to cross-examine either of the witnesses in the fraud case. Upon the conclusion of the defendant's "fraud" case plaintiff moved for a directed verdict on the grounds that SSC had failed to make out a *prima facie* case of fraud. The trial court agreed.

The standard of review for a directed verdict is well settled. A court must take the strongest legitimate view of the evidence in favor of the opponent, allow all reasonable inferences from that evidence in the opponent's favor, discard all countervailing evidence and then, affirm the directed verdict when reasonable minds could draw but one conclusion. *Solomon v. First American Nat'l Bank of Nashville*, 774 S.W.2d 935, 940 (Tenn.App.1989). Prior to directing a verdict the trial court should consider all evidence introduced by the non-moving party, draw all reasonable inferences from that evidence, disregard all countervailing evidence and, if there is any competent evidence about which reasonable minds could differ, the trial court should overrule the motion and should not direct a verdict. *Redding v. Conally Ford, Inc.*, 662 S.W.2d 938, 942 (Tenn.App.1983).

In the instant case, the Chancellor directed verdict for Harrogate at the close of the counter-plaintiff's suit because the counter-plaintiff failed to introduce evidence during its case in chief to establish a *prima facie* case of actionable fraud against Harrogate. In order to recover for fraud, SSC had to introduce material evidence to establish all of the following elements: one, that Harrogate intentionally misrepresented an existing or past material fact; two, that Harrogate had knowledge that its representation of the existing or past material facts was false; three, that SSC's reliance on any misrepresentation by Harrogate was reasonable; four, that Harrogate's misrepresentation induced SSC's action; and, five, that SSC suffered damage for reliance on the misrepresentation. *See Dobbs v. Guenther*, 846 S.W.2d 270, 274 (Tenn.App.1992).

To constitute fraud the complained of factual misrepresentations must have been false. The complaining party must have relied on the false representation in reaching its decision and the fact misrepresented must have been "so material that it determined the conduct of the party seeking relief." *Dozier v. Hawthorne Dev. Co.*, 37 Tenn.App. 279, 262 S.W.2d 705, 709 (1953). For an alleged misrepresentation to be actionable, it must constitute a "material inducement" for the complaining party to act. *Chamberlin v. Fox Coal & Coke Co.*, 92 Tenn. 13, 20 S.W. 345, (1892). Where the complaining party in the instant case the defendants/appellants had opportunity to find out all about the computer equipment and after taking such opportunity and was then satisfied with the equipment's price, there is no reliance on any alleged representation and there can be no recovery for alleging misrepresentation. *Lambdin v. Garland*, 723 S.W.2d 953, 955–56 (Tenn.App.1986). There is nothing in the record to show that Harrogate as a co-buyer of the equipment with SSC ever made any representations concerning the equipment.

A party seeking to recover damages for fraud and/or misrepresentation must not only establish the misrepresentation but must also establish some loss or injury as a result of the misrepresentation. Both misrepresentation and injury must exist before there can be an award of damages. *Whitson v. Gray*, 40 Tenn. 441, 444 (1859); *see also Croft v. Gentry*, 33 Tenn.App. 595, 232 S.W.2d 424, 426 (1950) in which it was held there can be no relief for fraud which in effect produces no injury or loss to the party seeking redress on the account of it.

The proper measure of damages for fraud is that the injured party should be compensated for actual injuries sustained by placing him or her in the same position he or she would have been had the fraud not occurred. *Youngblood v. Wall*, 815 S.W.2d 512, 518 (Tenn.App.1991). A plaintiff who alleges fraud bears the burden of proving damages. *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228, 233 (Tenn.App.1976). Fraud cannot be merely speculative but must be proved to a reasonable certainty as a matter of law. *Id.* 546 S.W.2d at 233.

Here, the defendants/appellants counter-plaintiffs, by agreement led off with their

alleged fraud case on the first day of trial. At the close of the counter-plaintiff's case in chief, Harrogate moved for directed verdict and the trial court granted it because SSC had failed to produce any evidence showing that SSC materially relied to its detriment, or was materially induced by representations made by Harrogate and entered into the original joint purchase contract. In addition, SSC failed to prove during its case in chief that it was in any way damaged by any alleged actions of Harrogate. The Chancellor, in granting a directed verdict, told both parties that "this is a case where there is just no proof that [SSC is] damaged without total speculation." We are unable to find any damages accruing to SSC in this record. SSC made a gross profit of over $350,000.00 in less than six months and then refused to divide that profit with Harrogate, notwithstanding SSC's contractual agreement to do so. SSC failed to establish a *prima facie* case actionable fraud. SSC failed to prove that any alleged false representations by Harrogate materially induced SSC to enjoin Harrogate in buying the used computer equipment, and SSC failed to show any damages· from any actions by Harrogate other than what the Chancellor referred to as "total speculation."

SSC had the burden of proving its asserted cause of action. *Leonard v. Gilreath,* 625 S.W.2d 722, 724 (Tenn.App.1981).

█ The party moving for directed verdict is entitled to such where the other side's evidence fails to establish a *prima facie* case for that side's cause of action. 75a Am. Jur.2d *Trial,* § 90, (1991).

The issues raised by the defendants/appellants are without merit. It therefore results that the judgment of the trial court is affirmed, and the cause is remanded to the trial court for any further necessary proceedings. Costs on appeal are taxed to the defendants/appellants.

TODD, P.J., M.S., and CANTRELL, J., concur.