IN THE COURT OF APPEALS OF TENNESSEE

FILED

December 9, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| ROBERT W. BAGBY, | ) | C/A NO. 03A01-9705-CV-00183 |
| Plaintiff-Appellee, | ) | |
| v. | ) | APPEAL AS OF RIGHT FROM THE |
| | ) | CARTER COUNTY CIRCUIT COURT |
| DEAN RUSSELL CARRICO, | ) | |
| Defendant-Appellant. | ) | HONORABLE G. RICHARD JOHNSON, |
| | ) | CHANCELLOR, By Interchange |

For Appellant

THOMAS R. BANKS
Banks & Banks
Elizabethton, Tennessee

For Appellee

HOWELL H. SHERROD, JR.
Sherrod, Stanley, Lincoln &
  Goldstein
Johnson City, Tennessee

O P I N I O N

AFFIRMED AND REMANDED                                    Susano, J.

In this case, the plaintiff claims that the defendant made an intentional misrepresentation in connection with the sale of a tract of unimproved real property. Following a bench trial, the court found that the defendant, Dean Russell Carrico ("Carrico"), had fraudulently misrepresented a material fact, resulting in a judgment of $21,911.97 for the plaintiff, Dr. Robert W. Bagby ("Bagby"). The trial court also found that Carrico's conduct violated the Tennessee Consumer Protection Act of 1977, T.C.A. § 47-18-101, *et seq.* ("the Act"). Carrico appealed, raising three issues that present the following questions for our review:

> 1. Was the Chancellor correct in finding that Bagby and Carrico entered into an agreement to buy property together?
>
> 2. Was the Chancellor correct in finding that Carrico was guilty of a fraudulent misrepresentation?
>
> 3. If Carrico made a misrepresentation of fact, was Bagby's reliance on the misrepresentation reasonable?

I

In the spring of 1995, Carrico commenced negotiations with Michael Miller and his wife, Alesia Miller ("the Millers") to purchase the Millers' 40-acre tract of land. The Millers and Carrico subsequently agreed upon a purchase price of $2,500 per acre. Several weeks later, Carrico contacted Bagby, who had previously told Carrico that he would be interested in purchasing some property "with a view," and offered to sell one-half of the Miller tract to Bagby for $3,450 per acre.

2

Bagby testified that Carrico told him that he, Carrico, had agreed to pay the Millers $3,450 per acre. Carrico, however, testified that he had made no such representation, but had only quoted that amount as the sale price between himself and Bagby. Bagby testified that they agreed that Carrico would purchase the entire tract, at $3,450 per acre, and would then sell half of the land to Bagby at the same price. It is undisputed that the parties agreed to share equally the cost of a survey and the attorney's fees attendant to the transaction. Carrico subsequently billed Bagby for half of the fees charged by the attorney and surveyor. Bagby had no contact with the attorney, the surveyor, or the Millers; nor did he review any paperwork between the Millers and Carrico.

Carrico's transaction with the Millers was closed on June 28, 1995. The deed to Carrico, which reflects a purchase price of $100,600 -- representing 40.24 acres at $2,500 per acre -- was recorded immediately after the closing. Carrico and Bagby completed their transaction the same afternoon. Bagby paid Carrico $69,414 for 20.12 acres, or $3,450 per acre.

Approximately one month later, Bagby discovered that Carrico had paid only $2,500 per acre for the entire tract. Bagby and his wife testified that when Bagby confronted Carrico regarding the discrepancy, Carrico stated that he had paid the Millers "something under the table" in addition to the $2,500 per acre, and thus had paid as much for his half of the tract as had Bagby; however, there was no other evidence at trial of an "under the table" payment.

3

Bagby filed suit, alleging that Carrico was guilty of a fraudulent misrepresentation, as well as a violation of the Act. The trial court agreed and entered judgment in favor of Bagby on both theories. The trial court specifically found that Carrico had falsely stated to Bagby that the price of the property was $3,450 per acre, when in fact it was only $2,500 per acre. The court also stated that "particularly in this case, word against word, the Court has devoted time and effort in evaluating and weighing and determining the credibility of the parties and their witnesses." The trial court awarded Bagby compensatory damages of $19,414, pre-judgment interest of $2,497.97, attorney's fees, and certain discretionary costs. It declined, however, to award treble damages under the Act, finding that such an award was not appropriate under the circumstances. Likewise, the court refused to award punitive damages, finding that Bagby had "failed to prove the elements of punitive damages by clear and convincing evidence."

II

Our review of this non-jury case is *de novo* upon the record of the proceedings below; however, that record comes to us with a presumption that the trial court's factual findings are correct. Rule 13(d), T.R.A.P. We must honor this presumption unless we find that the evidence preponderates against those findings. *Id.*; **Union Carbide Corp. v. Huddleston**, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law, however, are not afforded the same deference. **Campbell v. Florida Steel**

4

***Corp.***, 919 S.W.2d 26, 35 (Tenn. 1996); ***Presley v. Bennett***, 860 S.W.2d 857, 859 (Tenn. 1993).

Our *de novo* review is subject to the well-established principle that the trial court is in the best position to assess the credibility of the witnesses; accordingly, such credibility determinations are entitled to great weight on appeal. ***Massengale v. Massengale***, 915 S.W.2d 818, 819 (Tenn.App. 1995); ***Bowman v. Bowman***, 836 S.W.2d 563, 566 (Tenn.App. 1991). In fact, this court has noted that

> ...on an issue which hinges on witness credibility, [the trial court] will not be reversed unless, other than the oral testimony of the witnesses, there is found in the record clear, concrete and convincing evidence to the contrary.

***Tennessee Valley Kaolin Corp. v. Perry***, 526 S.W.2d 488, 490 (Tenn.App. 1974).

III

To prevail on a claim of fraudulent misrepresentation, a plaintiff must demonstrate that:

> 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damage as a result of the misrepresentation.

5

*Metropolitan Gov't of Nashville and Davidson County v. McKinney*, 852 S.W.2d 233, 237 (Tenn.App. 1992)(citing *Graham v. First American Nat'l Bank*, 594 S.W.2d 723, 725 (Tenn.App. 1979)); *Devorak v. Patterson*, 907 S.W.2d 815, 819 (Tenn.App. 1995). In cases involving fraud in the sale of real property, this court has held that

> [o]ne who in a real estate transaction in which he has a pecuniary interest supplies false information for the guidance of others is subject to liability for the pecuniary loss caused to them by their justifiable reliance on such information.

*Youngblood v. Wall*, 815 S.W.2d 512, 518 (Tenn.App. 1991)(citing *Chastain v. Billings*, 570 S.W.2d 866 (Tenn.App. 1978)).

Generally speaking, the measure of damages in a fraud case is to compensate the injured party for actual damages by attempting to place that party in the same position that he or she would have been in had the fraud not occurred. *Harrogate Corp. v. Systems Sales Corp.*, 915 S.W.2d 812, 817 (Tenn.App. 1995); *Youngblood*, 815 S.W.2d at 518.

IV

The trial court found that each of the elements of a fraudulent misrepresentation were present in this case. After reviewing the record, we are of the opinion that the evidence does not preponderate against this conclusion. Rule 13(d), T.R.A.P. As stated earlier, the trial court's determinations

6

regarding witness credibility are afforded great deference on appeal. *Massengale*, 915 S.W.2d at 819; *Bowman*, 836 S.W.2d at 566. It is clear that the trial court accredited Bagby's testimony to the effect that Carrico had stated that he was paying the Millers a price of $3,450 per acre for the property.

Carrico argues that the trial court erred in finding that the parties entered into an agreement to buy property together, in finding that Carrico was guilty of fraudulent misrepresentation, and in finding that Bagby's reliance on any misrepresentation was reasonable.

Carrico contends that he and Bagby were neither partners nor engaged in a joint venture. We believe that the question of whether the parties were partners or engaged in a joint venture is immaterial. Such a relationship is not a prerequisite to a finding of a fraudulent misrepresentation in this case. For the elements of such a claim, *see, e.g., Devorak*, 907 S.W.2d at 819; *McKinney*, 852 S.W.2d at 237.

Secondly, Carrico argues that he had no duty to disclose to Bagby the nature of his dealings with the Millers. We find this argument to be without merit. Carrico did have an obligation to respond truthfully when Bagby asked him the purchase price of the property. This is not a case of fraudulent concealment; on the contrary, it involves an affirmative misrepresentation. As found by the trial court, Carrico stated that he was paying $3,450 per acre for the property.

Carrico maintains that the proof does not establish that he made that representation to Bagby. He supports this contention by pointing out that the parties' testimony on this point is in conflict, and that another witness, Bert Pat Wolfe, Jr., testified that he did not specifically hear Bagby ask Carrico if the Millers were selling Carrico the land for $3,450 per acre. Wolfe's testimony, however, indicates that Carrico did specifically represent to Bagby that $3,450 per acre was the purchase price:

> Q. Tell the Court what you heard and what was said and what the price was.
>
> A. Well, while we were standing in the road looking at the property... Dr. Bagby confirmed with Mr. Carrico that thirty-four hundred and fifty ($3,450.00) dollars was the price per acre that they were paying. Mr. Carrico confirmed that thirty-four hundred and fifty ($3,450.00) dollars was the purchase price.
>
> Q. And is there any doubt in your mind about that?
>
> A. That thirty-four hundred and fifty ($3,450.00) dollars was the price?
>
> Q. Right.
>
> A. No sir.
>
> Q. For the whole tract.
>
> A. For the whole tract.
>
> Q. Did you understand it that Dr. Bagby and Mr. Carrico were going to split the tract at some point in time?
>
> A. Yes sir. Twenty acres each.

The trial court obviously accredited this testimony, along with that of Bagby. Again, these determinations pertain to the

credibility of the witnesses and are entitled to great weight on appeal. *Massengale*, 915 S.W.2d at 819; *Bowman*, 836 S.W.2d at 566. We have found no "clear, concrete and convincing" evidence to contradict the trial court's credibility determinations. *Tennessee Valley Kaolin Corp.*, 526 S.W.2d at 490.

Finally, Carrico contends that, if he did make a misrepresentation, Bagby's reliance on his misrepresentation was not reasonable, due to the fact that Bagby had equal access to the information in question, i.e., the true purchase price of the property from the Millers. In support of his argument, Carrico cites three cases for the proposition that a party's reliance upon a fraudulent misrepresentation is not reasonable where the means of knowledge is readily within that party's reach. *See McKinney*, 852 S.W.2d at 239; *Solomon v. First American Nat'l Bank*, 774 S.W.2d 935, 943 (Tenn.App. 1989); *Winstead v. First Tennessee Bank N.A., Memphis*, 709 S.W.2d 627, 633 (Tenn.App. 1986).

The facts of the *McKinney* and *Solomon* cases are inapposite to those of the instant case. In the *Winstead* case, which did involve a sale of real property, the Court of Appeals stated that the general rule regarding justifiable reliance and the means of knowledge is applicable

> [u]nless the representations are such as are
> calculated to lull the suspicions of a
> careful man into a complete reliance
> thereon....

9

*Winstead*, 709 S.W.2d at 633. We find that this language is particularly applicable to the facts of the instant case. It is apparent that Carrico's representations were calculated to reasonably induce in Bagby a belief that Carrico was paying $3,450 per acre for the subject property. It is also clear that Bagby relied completely on Carrico's representations. Having misrepresented a material fact to one who had placed his trust in him, Carrico cannot now claim that the injured party should have independently discovered that he was not telling the truth. *Id.* Furthermore, we disagree with Carrico's contention that Bagby "had equal access to the information in question." Bagby was under no duty to contact the Millers, or to investigate the terms of their agreement with Carrico; nothing that Carrico did or said was reasonably calculated to make Bagby suspicious or put him on notice that something was amiss. Likewise, Bagby should not be charged with constructive notice of the actual purchase price simply because that amount was reflected on a deed recorded only hours before the closing of his own transaction with Carrico. In any event, it has been held that one who practices bad faith upon another may not invoke the doctrine of constructive notice in aid of his own wrongdoing. *Hamilton v. Galbraith*, 15 Tenn.App. 158, 175 (1932). For these reasons, we find no merit in Carrico's contention that Bagby's reliance upon his representations was unjustified.

We find that the evidence does not preponderate against the trial court's findings that Carrico made a misrepresentation of an existing fact; that the representation was false when made; that the representation was in regard to a material fact; that

10

Carrico made the false representation knowingly; that Bagby reasonably relied on Carrico's misrepresentation; and that Bagby suffered damages as a result of the misrepresentation. *See Devorak*, 907 S.W.2d at 819; *McKinney*, 852 S.W.2d at 237.

We do not find it necessary or appropriate to examine the trial court's alternative basis of liability under the Act. It is not necessary because the lower court's judgment can be sustained on the plaintiff's theory of fraudulent misrepresentation; it is not appropriate because Carrico advances no issues under the Act. *See* Rules 13(b) and 27(a)(4), T.R.A.P.

V

The appellee Bagby contends that, since Carrico's acts were intentional, the damages awarded by the trial court should be multiplied. As stated earlier, the applicable measure of damages in a case of fraudulent misrepresentation is the amount of actual damages sustained by the defrauded party. *Harrogate Corp.*, 915 S.W.2d at 817; *Youngblood*, 815 S.W.2d at 518. In contrast, treble damages are available under the Act to remedy willful or knowing violations; however, the Act vests the trial court with broad discretion in determining whether to award such relief. T.C.A. § 47-18-109(a)(3); *see also Smith v. Scott Lewis Chevrolet, Inc.*, 843 S.W.2d 9 (Tenn.App. 1992). Assuming, without deciding, that the Act applies to this transaction,[1] we find no abuse of discretion in the trial court's decision not to

_____

[1]*Cf. Ganzevoort v. Russell*, 949 S.W.2d 293 (Tenn. 1997).

11

multiply the damages.  Likewise, to the extent that Bagby argues that he is entitled to punitive damages, we do not find that the evidence preponderates against the trial court's finding that Bagby failed to prove the requisite "egregious conduct" by clear and convincing evidence, as required by *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992).

Bagby seeks counsel fees for this appeal, contending that it is frivolous in nature under T.C.A. § 27-1-122.  We disagree; therefore, his request is denied.

Accordingly, the judgment of the trial court is in all respects affirmed.  Costs on appeal are taxed to the appellant and his surety.  This case is remanded to the trial court for the enforcement of the judgment and collection of costs assessed below, all pursuant to applicable law.

_____
Charles D. Susano, Jr., J.

CONCUR:


_____
Houston M. Goddard, P.J.


_____
William H. Inman, Sr.J.