# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

July 16, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

MIKE DANIEL and
DENNY KNIGHT,

    Plaintiffs/Appellants,

VS.

FLETCHER RIDGE, INC.,

    Defendant/Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Appeal No.
01-A-01-9811-CH-00599

Davidson Chancery
No. 96-3756-II

APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE CAROL L. McCOY, CHANCELLOR

JORDAN S. KELLER
LASSITER, TIDWELL & HILDEBRAND, PLLC
213 Fifth Avenue, North
Nashville, Tennessee 37219
    Attorney for Plaintiffs/Appellants

SCOTT K. HAYNES
LUTHER WRIGHT, JR.
BOULT, CUMMINGS, CONNERS & BERRY, PLC
414 Union Street, Suite 1600
Nashville, Tennessee 37219
    Attorneys for Defendant/Appellee

AFFIRMED AND REMANDED

BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:
KOCH, J.
COTTRELL, J.

# O P I N I O N

The issues in this appeal are (1) whether the defendant preserved its motion for a directed verdict by renewing it at the close of all the proof, and (2) whether the court erred in granting a directed verdict in accordance with Rule 50.02, Tenn. R. Civ. Proc. We find that the defendant did preserve its motion and that there was no proof offered on which to base a verdict for the plaintiff. Therefore, we affirm.

## I.

Mike Daniel owned LSI Recording Studio in Nashville and Denny Knight was a recording engineer at the studio. They had recorded certain songs for artist Eric Hamilton and had a claim against the masters for their services. Mr. Daniel also had a management agreement with Eric Hamilton and Jeffery Williams Younger, along with a limited right to publish their compositions.

As with many young artists seeking that first recording deal, the legal affairs of Mr. Hamilton had become quite tangled. In 1994, Fletcher Ridge, Inc., through its principal officer, Mr. Fletcher, took an interest in the Eric Hamilton Band. Fletcher Ridge decided to secure the right to manage the group and to pursue a contract with a major record label. In order to proceed Fletcher Ridge had to clear up the competing claims on the management rights and the right to publish the band's original material. As a first step, Fletcher Ridge, Inc. purchased an assignment from Daniel and Knight of their interest in the master records. In the November 1994 agreement, Daniel also agreed to assign his management and publishing rights with Hamilton and Younger to Fletcher Ridge. Paragraph four of the written agreement between Daniel, Knight, and Fletcher Ridge, contains this provision:

> In the event Daniel's contractual rights in the Management Agreement and Publishing Agreements of Hamilton and Younger attached hereto as Exhibits "B" and "C" respectively are enforceable, and Fletcher Ridge is successful in enforcing such rights, Fletcher Ridge agrees to pay to Daniel the additional sum of Forty-two

Thousand, Five Hundred Dollars ($42,500.00) within one (1) year after date of execution of this Agreement, and Ten Thousand Dollars ($10,000.00) to Knight.

Fletcher Ridge did obtain the record deal for the Eric Hamilton Band and participates in its management. When they were not paid, Daniel and Knight sued Fletcher Ridge for the $52,000 mentioned in paragraph four. The complaint also contained a count alleging fraud in the negotiations over the assignment of the management and publishing contracts to Fletcher Ridge. At the close of the plaintiffs' proof Fletcher Ridge moved for a directed verdict. The court granted the motion as to one of the plaintiffs' claims but reserved ruling on the fraud count and the claim related to paragraph four of the agreement. The court said: "As to the rest of the motion to dismiss, the court will take it under advisement. And it can be renewed at close of proof, but I would suggest to you, each of you, that you be prepared to have this matter go to the jury."

At the close of all the proof counsel for Fletcher Ridge again addressed the court on the motion for a directed verdict:

> MR. WRIGHT: Very briefly. Your Honor, it's my understanding, and, Mr. Keller, you can tell me if you have a different understanding, that you were reserving your ruling on the remainder of our motion for directed verdict until the jury gets back.
>
> THE COURT: That's correct.
>
> MR. WRIGHT: I wanted to make that clear. Thank you.

The case went to the jury on the fraud count and the paragraph four claim. The jury returned a verdict for the plaintiffs on paragraph four in the amount of $42,500 for Mr. Daniel and $10,000 for Mr. Knight. The jury rejected any claim based on fraud. After the jury returned its verdict the following exchange took place between the court and counsel for Fletcher Ridge:

MR. WRIGHT: Your Honor, at this point, I would move to be heard on my directed verdict motion. We move for a judgment on a directed verdict.

THE COURT: You want to do the direct verdict now?

MR. WRIGHT: Well, however, I just wanted to make sure. That motion hasn't been ruled on and we would like an opportunity to be heard on that motion.

THE COURT: It's my understanding that the motion for directed verdict would properly be presented before this matter was put in the hands of the jury. It would be appropriate for you to make a motion to alter or amend at this time, but you have to file it and be heard on a motion date.

MR. WRIGHT: I understand, Your Honor. I'm just simply saying my understanding is that you were going to reserve your ruling on the motion for directed verdict until after the jury rendered their verdict. That was my understanding.

THE COURT: Well, I anticipated that you would present it before this matter was given to the jury. I didn't realize that you were not waiving it.

MR. WRIGHT: And, Your Honor, I just wanted to make sure for the record that you understand --

THE COURT: I do.

MR. WRIGHT: -- that that was my understanding. And we move for a judgment, obviously, on directed verdict and we'll file the appropriate papers.

THE COURT: Thank you.

Fletcher Ridge filed a Rule 50.02, Tenn. R. Civ. Proc., motion seeking relief from the judgment in accordance with its motion for a directed verdict or, in the alternative, for a new trial. The trial judge granted the motion for a directed verdict.

## II.

### a. Waiver

The plaintiffs assert that Fletcher Ridge waived its motion for a directed verdict by not renewing it at the close of all the proof. *See Potter v. Tucker*, 688

S.W.2d 833 (Tenn. App. 1985); *Johnson v. Woman's Hospital*, 527 S.W.2d 133 (Tenn. App. 1975). Based on the record we have quoted, however, we think the defendant clearly preserved its motion. The court took the motion "under advisement" at the close of the plaintiffs' proof and defendant's lawyer raised the issue again at the end of the proof just before the court and the lawyers began to put the court's charge into its final form.

**b. The Directed Verdict**

In order to direct a verdict the trial judge must take the strongest legitimate view of the evidence in favor of the non-moving party, indulge all reasonable inferences in favor of the non-moving party, and disregard any evidence to the contrary. *Hicks v. Sovran Bank/Chattanooga*, 812 S.W.2d 296 (Tenn. App. 1991); *Harrogate Corp. v. Systems Sales Corp.*, 915 S.W.2d 812 (Tenn. App. 1995).

Paragraph four of the agreement promises to pay Daniel and Knight if the management and publishing agreements with Hamilton and Younger are enforceable and Fletcher Ridge is successful in enforcing them. The management and publishing rights were obtained in a contract dated May 15, 1993. In that agreement Hamilton agreed with Daniel and a third party, Ron Haffkine, to record certain masters with Daniel and Haffkine serving as producers. Daniel and Haffkine promised to pursue a recording contract for Hamilton with a major label. At the end of the lengthy agreement, the parties added this paragraph: "It is further understood that said producers shall retain management rights (25%) and all publishing rights on original material."

The agreement between Hamilton, Daniel and Haffkine was for a period of one year. In March of 1994 Mr. Hamilton filed a petition in bankruptcy listing the

production agreement as an obligation for which he sought to be discharged.  He received a discharge in January of 1995.

With respect to the management rights derived from the May 15, 1993 agreement, we think the proof clearly shows that at the time Mr. Daniel signed the agreement with Fletcher Ridge in November of 1994 his rights to manage Mr. Hamilton were non-existent. The one year term of the contract between Hamilton and Daniel/Haffkine had expired and, for good measure, the parties were under the automatic stay of the bankruptcy court.  Therefore the first condition in the assignment -- that Mr. Daniel have enforceable rights to manage Mr. Hamilton -- could not be met.

The publishing rights present a different problem. The discharge did not defeat the publishing rights Mr. Daniel acquired prior to Mr. Hamilton's bankruptcy. But, those publishing rights were owned by Daniel and Haffkine, not Daniel alone.  In addition, the uncontradicted proof shows that in August of 1993 Mr. Hamilton signed a separate agreement with Mr. Haffkine covering exactly the same rights as those contained in the May 1993 agreement with Daniel/Haffkine.  Mr. Daniel acknowledged that Mr. Haffkine claimed the exclusive publishing rights to Mr. Hamilton's material, and in working out a record deal for Mr. Hamilton,  Fletcher Ridge had to purchase those rights from Mr. Haffkine.

The "Exhibit C" referred to in Daniel's agreement with Fletcher Ridge contained publishing agreements between Eric Hamilton and James Dowell.  On the face of the record, therefore, Mr. Daniel did not have any rights in those compositions. Mr. Dowell and Mr. Daniel testified that these rights had been assigned to Mr. Daniel, but the assignment had apparently been lost.  The most critical failure of the proof is the absence of any assignment of these contracts from Daniel to Fletcher Ridge.

Therefore, we find no proof in the record of any enforceable publishing rights assigned to Fletcher Ridge by Daniel. The condition precedent to recovering under their contract for publishing rights has not been met. The chancellor was justified in granting the Rule 50.02 motion.

We affirm the judgment of the trial court and remand the cause to the Chancery Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellants.

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:


_____
WILLIAM C. KOCH, JR., JUDGE


_____
PATRICIA J. COTTRELL, JUDGE