IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 21, 2019 Session

## DOUGLAS A MESSERLI, ET AL. v. VICKIE SUE WILLIAMS, ET AL.

Appeal from the Chancery Court for Knox County
No. 188158-3    Michael W. Moyers, Chancellor

———————————————————

### No. E2018-01807-COA-R3-CV

———————————————————

This action was filed by two brothers, after the death of their father, contesting the validity of an amendment to their father's trust agreement. The brothers alleged that their siblings coerced their infirmed father to amend his trust in such a manner that was favorable to the siblings' pecuniary interests and that two sisters had a confidential relationship with their father. The trial court directed a verdict in favor of the defendants. The plaintiffs appealed. We affirm the decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and THOMAS R. FRIERSON, II, JJ., joined.

T. Michael Craig-Grubbs, Knoxville, Tennessee, for the appellants, Douglas A. Messerli, and Charles Messerli.

Mital D. Patel, Knoxville, Tennessee, for the appellees, Vickie Sue Williams, Logan Williams, Beverly K. Blakeman, Billy Messerli, and Lisa D. Edquist.[1]

## OPINION

### I.    Background

Roy A. Messerli ("Father") was a retired nuclear submarine inspector, a general contractor, and an owner/operator of several rental properties. Father lived in California until about 2006, when he and his wife moved to Knoxville, Tennessee. Their daughter,

---

[1] Edquist, a defendant in the original court proceeding, was a witness in the appeal, not an appellee.

Beverly K. Blakeman ("Blakeman") lived with her parents.

On January 10, 2008, Father executed updated estate planning documents which included a Will, Power of Attorney, Living Will, and the "Roy A. Messerli 2008 Revocable Trust Agreement" ("the 2008 Trust"). These documents had been prepared by Knoxville attorney Dale C. Allen.

At the time of execution of these documents, Father was a widower. He named as his children: Douglas A. Messerli, Billy Steven Messerli, Beverly K. Blakeman, Vickie Sue Williams ("Defendant Williams"), Lisa Doreen Edquist, and Charles Messerli. Charles Messerli was Father's son from his first marriage. The other five children were from his second marriage. Father appointed Defendant Williams as the Personal Representative of his Will and his attorney-in-fact, with Blakeman as the successor. Father appointed Defendant Williams, Blakeman, and Logan Williams as Co-Trustees of the 2008 Trust. If any of the original trustees were unable or unwilling to serve, the remaining trustees could serve without appointing a successor. A successor trustee could be appointed by Father, if not disabled, or by his children, but only those who were not disabled. In addition, the 2008 Trust provided Blakeman the option to purchase Father's home within six months from the date of Father's death.

On August 3, 2010, Father executed an amendment to the 2008 Trust ("the 2010 Amendment"), pursuant to Section 9 of the 2008 Trust. Douglas A. Messerli and Charles Messerli (collectively, "Plaintiffs") contest this amendment in this appeal.

In 2011, Father was diagnosed with lung cancer. He passed away on December 3, 2012, survived by his six children.

On June 3, 2013, Plaintiffs filed a complaint contesting the validity of the 2010 Amendment. Plaintiffs alleged that in 2010, (1) Father's mental and physical condition was such that he could no longer care for himself; (2) Blakeman was Father's primary caretaker and this position created a confidential relationship between the two; (3) Defendant Williams met with attorney Allen without Father, insisting on changes to the estate planning documents Allen had previously prepared; (4) Father lacked the mental capacity to prepare the 2010 Amendment and that all or some of the following individuals (Defendant Williams, Logan Williams, Blakeman, Edquist, and Billy Messerli) (collectively, "Defendants") drafted the 2010 Amendment and coerced Father to sign the document; and (5) the combination of Father's diminished physical and mental capacity and Defendants' confidential relationship with Father "raise[d] a presumption that the purported 2010 Amendment was the product of duress and undue influence."

The trial court entered an Order on November 17, 2017, finding that Plaintiffs' challenge to the 2010 Amendment on the ground that Father lacked mental capacity

could not be substantiated with any medical records. The trial court also entered an Order on March 20, 2018, stating that Plaintiffs' claim that Defendant Williams, by virtue of her appointment as attorney-in-fact held a confidential relationship with Father, was unfounded, as Defendant Williams never exercised that appointment. Furthermore, the court also granted, in part, Defendants' Motion for Summary Judgment with respect to the allegations of undue influence against Defendant Williams. The trial court did determine that genuine issues of material fact existed as to Plaintiffs' claims that Blakeman exercised dominion and control over Father to establish a confidential relationship and that she unduly influenced Father to execute the 2010 Amendment.

The trial commenced on August 29, 2018. Plaintiffs argued that Blakeman, taking advantage of Father's age and failing physical health, exercised control over his finances. Plaintiffs claimed that Blakeman's personal financial issues motivated her to unduly influence Father to amend the 2008 Trust. At the close of Plaintiffs' proof, the trial court granted Defendants' motion for directed verdict, stating that it did not believe that reasonable minds could differ on whether the burden of proving the confidential relationship had been met.

## II.     ISSUE

The issue raised in this appeal is whether the trial court erred in granting a directed verdict in favor of Defendants on the issue of whether Blakeman had a confidential relationship with Father.

## III.     STANDARD OF REVIEW

An appellate court must review a trial court's ruling on a motion for directed verdict de novo. *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 49 (Tenn. Ct. App. 2013) (citing *Brown v. Crown Equip. Corp.*, 181 S.W.3d 268, 281 (Tenn. 2005) (citing *Gaston v. Tenn. Farmers Mut. Ins. Co.*, 120 S.W.3d 815, 819 (Tenn. 2003)). "Directed verdicts are available in will contest cases to the same extent that they are available to other civil cases." *Mitchell v. Smith*, 779 S.W. 2d 384, 387 (Tenn. Ct. App. 1989) (citing *Scott v. Atkins*, 314 S.W.2d 52, 60 (1957)).

When deciding a motion for a directed verdict, "courts must take the strongest legitimate view of the evidence against the directed verdict and must deny the motion in any case where all reasonable persons would not reach the same conclusion." *Brown*, 428 S.W.3d at 49-50 (citing *Smith v. Inman Realty Co.*, 846 S.W.2d 819, 821 (Tenn. Ct. App. 1992); *Brown*, 181 S.W.3d at 281; *Gaston*, 120 S.W.3d at 819).

Under Rule 50 of the Tennessee Rules of Civil Procedure, to circumvent a motion

for a directed verdict, the nonmoving party must present enough evidence to establish a prima facie case on every element of its case. *Brown,* 428 S.W.3d at 50 (citing *Harrogate Corp. v. Systems Sales Corp.*, 915 S.W.2d 812, 818 (Tenn. Ct. App. 1995)). The legal question before the appellate court is whether, for each element, the material evidence presented was sufficient to create a jury issue. *Id.* (citing *Richardson v. Miller*, 44 S.W.3d 1, 30 (Tenn. Ct. App. 2000)).

## IV.    DISCUSSION

Plaintiffs assert that before Father executed the 2010 Amendment, Blakeman, as his caretaker, held a confidential relationship with him. Plaintiffs also assert that at the time of the execution of the 2010 Amendment, Blakeman took advantage of Father's age and failing health and exerted undue influence over him to force the 2010 Amendment, a document which is favorable to Defendants' pecuniary interests.

Because confidential relationships can exist in a variety of forms, our courts have not clearly defined the elements constituting a confidential relationship. *In re Estate of Morrison*, No. E2014-00764-COA-R3-CV, 2015 WL 2258286, at *4 (Tenn. Ct. App. 2015) (citing *Robinson v. Robinson*, 517 S.W.2d 202, 206 (Tenn. Ct. App. 1974)). This court, however, has rejected the notion that a confidential relationship is merely a relationship of mutual trust, but rather is one

> where confidence is placed by one in the other and the recipient of that confidence is the dominant personality, with the ability, because of that confidence, to influence and exercise domain over the weaker or dominated party, such as nurse and invalid, trusted business advisor and friend, etc.

*Iacometti v. Frassinelli*, 494 S.W.2d 496, 499 (Tenn. Ct. App. 1973) (citing *Bayliss v. Williams*, 46 Tenn. 440 (6 Cold.) (1869)).

Because it cannot be presumed that in a parent-adult child relationship, one person exercises control over the other, the relationship between the two is not necessarily a confidential one. *Iacometti*, 494 S.W.2d at 499. Unless it can be proven that the free agency of the parent or adult-child was destroyed, either by way of physical or mental deterioration, or through fraud or duress, the relationship is assumed not to be confidential in nature. *Kelly v. Allen*, 558 S.W.2d 845, 848 (Tenn. 1977).

In this case, the record does not substantiate that a confidential relationship existed between Father and Blakeman when the 2010 Amendment was executed. Sufficient proof has not been presented that would lead reasonable minds to conclude that Blakeman exercised dominion and control over Father. Plaintiffs assert that because

- 4 -

Father was of advanced age and declining physical health, he depended on Blakeman for assistance in his daily life. However, according to the preponderance of the evidence, Father showed no signs of susceptibility to influence. No medical records were produced indicating that Father was unable to live independently or care for himself. Blakeman appears to have resided with Father not because he needed a caregiver but on her own accord.

Plaintiffs further assert that Father's dependence on Blakeman enabled her to assume command of his finances. They point to withdrawals made by Blakeman from the joint bank account she held with Father as proof that Blakeman exercised control over Father's finances. Of particular contention is one withdrawal in the amount of $20,000. Plaintiffs compare the instant case with *Kelley v. Johns*, 96 S.W.3d 189 (Tenn. Ct. App. 2002), in which the question arose whether son had a confidential relationship with his father and used that relationship to unduly influence his father to draft a new will. In *Kelley*, we observed: "In addition to proving the existence of a confidential relationship between two family members, a will's contestant must establish at least one other suspicious circumstance, such as a transaction benefitting the dominant party in the confidential relationship." *Id.* at 197. There was evidence in *Kelley* that the son, as an authorized signer on his father's accounts, wrote several checks payable to himself, his various businesses, and his wife's daughter. This did not happen in the case before us. Here, the evidence shows that, from January through September 2010 (one month after the 2010 Amendment was executed), Father wrote the majority of the checks from the joint checking account to pay bills. The $20,000 withdrawal by Blakeman was wired to Logan Williams and was ultimately paid back. It appears to have been a loan.

Plaintiffs also contend that the 2010 Amendment directly conflicts with Father's intentions in the 2008 Trust and with Father's signed statement that he loved all of his children equally. The terms of the 2008 Trust provide for revocation or amendments to the trust through a written instrument. Father abided by these terms when he executed, in the presence of a notary, the 2010 Amendment. Furthermore, simply because "a will may be unnatural, unfair or unjust creates of itself no presumption that the testator was incompetent at the time of its execution." *Farmers Union Bank of Henning v. Johnson*, 181 S.W.2d 369, 373 (Tenn. Ct. App. 1943). Plaintiffs may believe that the 2010 Amendment is unnatural or unfair, but that does not prove that Father was incompetent or was being unduly influenced by Blakeman.

## V. CONCLUSION

For the reasons stated above, the trial court's decision is affirmed and the case remanded for further proceedings as may be necessary. Costs of this appeal are assessed to the Appellants, Douglas A. Messerli and Charles Messerli.

_____

JOHN W. MCCLARTY, JUDGE