IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 21, 2014 Session

# REGIONS BANK, N.A. v. JOSEPH P. WILLIAMS, ET AL.

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-06-2426-1      Walter L. Evans, Chancellor**

_____

**No. W2013-00408-COA-R3-CV - Filed February 12, 2014**

_____

The trial court found that Defendants were liable to Plaintiff bank for losses stemming from a scheme wherein Defendants defrauded Plaintiff bank into making automobile loans to unqualified borrowers who were customers of a defendant. Defendants appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Drayton Durell Berkley, Memphis, Tennessee, for the appellants, Joseph P. Williams, The People's Choice Auto Sales, LLC, Kimberlee Williams, Alexis Williams and Chazz Brantley.

Douglas Allen Black and Ahsaki E. Baptist, Memphis, Tennessee, for the appellee, Regions Bank, N.A.

**OPINION**

## I. BACKGROUND

This case arises from a scheme executed by Joseph P. Williams ("Williams") and Teresa Parsley ("Parsley") to circumvent the loan application process of Regions Bank, N.A. ("Regions Bank") and provide loans to car purchasers with substandard credit. From 2004 to 2006, Williams owned The People's Choice Auto Sales, LLC ("People's Choice"), a business engaged in buying and selling new and used cars in Memphis, Tennessee. In April 2006, Parsley became the branch manager at the White Station Branch of Regions Bank in Memphis. Around the same time, Parsley's husband and her son-in-law were both employed by Williams at People's Choice.

In her capacity as branch manager, Parsley was authorized to take loan applications from

individuals seeking to finance automobile purchases. Parsley would enter information from the borrower's loan application into Regions Bank's computerized underwriting system for consideration. The system would approve or reject the loan application based on the information entered. If the loan was rejected, Parsley could request to enter her superior officer's override code to override the system's rejection and approve the loan application. Parsley was not authorized to use the override code without approval from her superior officer. Throughout August 2006, Parsley repeatedly used her supervisor's override code without permission to approve loan applications for individuals seeking to purchase automobiles from People's Choice. Parsley testified that in the months preceding August 2006, her branch of Regions Bank made fewer that five automobile loans per month on average. During the month of August 2006, Parsley approved around 246 loan applications to customers of People's Choice.

Pursuant to the scheme, salesmen at People's Choice filled out the loan applications for their customers and faxed them to Parsley at Regions Bank for approval. Evidence in the record suggests that People's Choice salesmen misrepresented the creditworthiness of their customers on the loan applications. For instance, in August 2006, James Randle purchased a 2003 Range Rover from People's Choice for around $53,000. The loan application for Mr. Randle, which it appears Williams filled out himself, was admitted into evidence at trial. The loan application stated that Mr. Randle had been employed by American First Mortgage for eight years and listed his income as $130,000 per year. Mr. Randle testified that he did not recall providing information about his employment or income during the sale, but that at the time, he had only worked at American First Mortgage for eleven months and his salary was around $50,000 per year. The loan application also falsely stated that Mr. Randle was not delinquent on his two home mortgages and that he made a $5,000 down payment on the Range Rover. In spite of the efforts of People's Choice to inflate the creditworthiness of its customers, all of the 246 loan applications Parsley approved in August 2006 were initially rejected by Regions Bank's computerized loan approval system. The minimum acceptable credit score for an automobile loan in August 2006 was 640. Of the 246 automobile loans, fewer than twenty were made to customers with acceptable credit scores. Regions Bank collection manager Gina Stevenson testified that even the loan applications for purchasers with acceptable credit scores did not meet Regions Bank's loan approval criteria for various reasons, such as insufficient collateral value or incompleteness.

In addition to misstating the qualifications of purchasers, People's Choice also requested loans in amounts that exceeded the value of the collateral. Parsley still approved the loans in violation of Regions Bank policy. People's Choice business records reflect that on August 30, 2006, it sold a 2006 Bentley Flying Spur to a customer whose credit score at the time was 265. People's Choice records state that the car was sold for $195,000. However, Regions Bank records reflect that the amount loaned for the purchase was $289,000, which was paid via check directly to People's Choice. Records from Williams's bank show that he deposited the check in his personal bank account on the same day.

Parsley testified that Williams constantly pressured her throughout August 2006 to get the loan applications approved, calling her as early as 4:00 A.M. to tell her to get to work because loan

applications were waiting on her fax machine. Some days, Parsley would arrive at the branch as early as 5:00 A.M. and stay until after 9:00 P.M. to keep up with the flood of loan applications that Williams sent her. In return, Williams paid Parsley at least $14,000, took Parsley and her husband to nice dinners, and at one point offered her ten percent ownership of People's Choice. In total, Parsley approved $9,316,218 in automobile loans for customers of People's Choice during August 2006, all of which was paid directly to People's Choice.

On September 6, 2006, Parsley sent an email to her superior officer resigning from her position at Regions Bank "[d]ue to stress levels and personal matters that are affecting my health and family." Thereafter, Parsley went directly to People's Choice, where she worked briefly after resigning from Regions Bank. The same day, Parsley received a call from the human resources department of Regions Bank inquiring about her decision and asking if she could return to her job after a leave of absence. Parsley testified that Williams implored her to return to Regions Bank, even offering to pay her $5,000 in cash per week in addition to her salary at the bank. Parsley declined the offer.

About a week later, corporate security officials from Regions Bank, having been alerted to the scheme by the unusually high volume of lending reflected in the branch's monthly report, asked Parsley to meet. On January 30, 2007, Parsley was formally charged in federal court with conspiracy and bank fraud, charges to which she pled guilty. In her testimony, Parsley reaffirmed that she conspired with Williams to carry out the scheme.

A review of Williams's bank records reflects that he deposited a large portion of the loan proceeds from Regions Bank into his personal bank account. Between August 24 and September 6, 2006, Williams deposited $1,904,181 into a Bank of America account shared with his wife, Kimberlee Williams. On or around September 1, 2006, Williams withdrew $643,293 from the account to pay off two mortgages on his home located at 6036 Willoughby Oak in Bartlett, Tennessee (the "Willoughby Property"). On October 30, 2006, Williams conveyed the Willoughby Property by quitclaim deed to Kimberlee Williams, Alexis Williams, and Chazz Brantley for stated consideration of $10.[1]

On May 12, 2008, Williams was indicted in federal court on a myriad of charges including bank fraud in relation to the automobile loan scheme. On December 12, 2006, Regions Bank brought this action in chancery court against Williams, People's Choice, and Parsley alleging that the parties schemed to defraud Regions Bank, resulting in a loss to Regions Bank of over $9,000,000.[2] On November 13, 2008, Regions Bank amended its suit to name Kimberlee Williams,

---

[1]Alexis Williams is the daughter of Joseph Williams. Chazz Brantley is the daughter of Kimberlee Williams.

[2]Regions Bank also named Bank of America as a defendant to the suit and requested that the trial court issue a temporary injunction prohibiting Bank of America from allowing withdrawals from any
(continued...)

Alexis Williams, and Chazz Brantley as defendants in order to recover the Willoughby Property, which Williams had conveyed to them by quitclaim deed in October 2006. Williams and People's Choice asserted counterclaims against Regions Bank for slander, libel, tortious interference with contract and business relationship.

The case was heard in a non-jury trial on August 27-29, 2012. Over the course of the trial, Regions Bank presented testimony of six individuals and introduced twenty-one exhibits into evidence. Apart from cross-examining Regions Bank's witnesses, the defendants declined to present any evidence to rebut the proof presented by Regions Bank. The trial court found that Williams, People's Choice, and Parsley engaged in a scheme to defraud Regions Bank of certain funds, which resulted in a loss to the bank of $5,851,842. Additionally, the trial court found that Williams's transfer of the Willoughby Property was an improper transfer to avoid creditors and that Regions Bank funds were used to pay off the first and second mortgages on it. The court ordered that a judgment in favor of Regions Bank be entered against Williams, People's Choice, and Parsley, jointly and severally, in the amount of $5,851,842. The trial court also ordered that Joseph Williams, Kimberlee Williams, Alexis Williams, and Chazz Brantley be divested of title in the Willoughby Property and that title to it be vested in Regions Bank. Finally, the trial court dismissed all counterclaims asserted by the defendants against Regions Bank. Williams, People's Choice, Kimberlee Williams, Alexis Williams, and Chazz Brantley (collectively referred to as "Appellants") timely filed a notice of appeal to this Court. Parsley did not join in the appeal.

## II. ISSUES

Appellants raise the following issues on appeal, as we have restated them:

1. Whether the trial court erred in admitting a chart prepared by Regions Bank that summarized the losses sustained on the automobile loans.

2. Whether the trial court erred by admitting the bank records of Williams and People's Choice.

3. Whether the trial court erred in admitting People's Choice business records into evidence.

4. Whether the trial court erred in admitting the testimony of Regions Bank's expert witness, R.A. Wilson.

5. Whether the trial court erred in finding a tacit agreement between Williams and Parsley to defraud Regions Bank.

---

[2](...continued)
accounts held in the names of the other defendants. Bank of America did not participate in the trial.

6. Whether the trial court erred in determining the amount of damages caused to Regions Bank.

Regions Bank presents the following issue:

1. Whether this appeal is frivolous entitling Regions Bank to an award of attorney's fees and costs.

### III. STANDARD OF REVIEW

We review the trial court's findings of fact *de novo* on the record, with a presumption of correctness, and will not reverse those findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d); *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). Where the trial court's determinations are based on its assessment of witness credibility, we will not reevaluate that assessment absent clear and convincing evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). We review the trial court's conclusions of law *de novo*, without any presumption of correctness. *Taylor v. Fezell*, 158 S.W.3d 352, 357 (Tenn. 2005).

### IV. DISCUSSION

Appellants raise multiple issues on appeal. In an attempt to organize their claims, we will address each of Appellants' arguments related to evidence admitted at trial before moving on to claims related to the trial court's findings and its award of damages.

#### *Evidence*

Generally, the trial court has wide discretion in determining the admissibility of evidence. *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004). Thus, we will only overturn a trial court's decision to admit or exclude evidence where there is an abuse of discretion. *Id.* The trial court abuses its discretion "only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). Under the abuse of discretion standard, we are not permitted to substitute our judgment for that of the trial court. *Id.* Rather, we must uphold the trial court's ruling so long as reasonable minds can disagree as to the propriety of the decision made. *Id.*

Appellants' first challenge to the evidence presented at trial is aimed at Exhibit 6, which is a document introduced by Regions Bank to summarize the bank's losses on the automobile loans approved by Parsley in August 2006 ("Regions Loss Chart"). The Regions Loss Chart was prepared by Gina Stevenson, a collections manager for Regions Bank, using information from the company's computerized internal database. The Regions Loss Chart lists each of the loans Parsley approved in August 2006 that still have balances owed on them. The document states that from those loans, Regions Bank has charged off, or deemed unrecoverable $5,851,842 of the debt. The trial court

admitted the Regions Loss Chart into evidence over the objection of Appellants' attorney.

Appellants contend that because Ms. Stevenson admittedly prepared the Regions Loss Chart for purposes of litigation, the trial court erred by admitting it into evidence under the business records hearsay objection of Rule 803(6) of the Tennessee Rules of Evidence. However, there is a distinction in the rules of evidence between business records and summaries of business records such as the one presented here. Tennessee Rules of Evidence Rule 1006 allows the contents of voluminous writings, which cannot be conveniently examined in court, to be presented in the form of a chart or summary. Tenn. R. Evid. 1006. The fact that the summary was created in anticipation of litigation does not disqualify it so long as the underlying data included in the summary satisfies the business records exception. *Fusner v. Coop Constr. Co.*, 211 S.W.3d 686, 693 (Tenn. 2007). Ms. Stevenson's testimony supports a finding that the data in Regions Loss Chart complies with the business records exception. The business records exception provides, in pertinent part, that

> [a] . . . record[] . . . made at or near the time by or from information transmitted by a person with knowledge and a business duty to record or transmit if kept in the regular course of a regularly conducted business activity and if it was the regular practice of that business activity to make the . . . record or data compilation

is admissible despite being hearsay. Tenn. R. Evid. 803(6). Ms. Stevenson testified that it is the regular practice of the Regions Bank collections department to maintain a file on each of its loans as soon as it is made. She also testified that the files are created by the loan officers, who have knowledge and a business duty to transmit the information. Ms. Stevenson testified that as a collections department manager, she is one of the people charged with maintaining records of the payment history and outstanding balance on each loan and that she prepared the Regions Loss Chart using that information. Based on the foregoing, it is clear that the data used to make the Regions Loss Chart complies with the business records exception, therefore it was within the discretion of the trial court to admit the Regions Loss Chart.

Next, Appellants contend that the trial court erred by admitting First Tennessee Bank and Bank of America records for Williams and People's Choice. They contend that Regions Bank did not give them sufficient notice that the records would be introduced as evidence during the trial, which is required by Rule 902(11) of the Tennessee Rules of Evidence. Rule 902(11) allows for affidavits by custodians to establish the basis for business records so that the custodian need not attend trial and testify. The party attempting to offer the records must provide written notice of its intention and make the record and declaration available sufficiently in advance of their offer into evidence to provide the adverse party with an opportunity to challenge them. Tenn. R. Evid. 902(11). Appellants contend that the records should not have been introduced at trial because they were not provided with the affidavits in a sufficient time. Appellants contend that the custodial affidavit for the Bank of America records was sent to them on August 24, 2012, only three days before trial. Additionally, Appellants contend that they were never served with notice that the First Tennessee Bank records would be introduced at trial.

We reject Appellants' argument with regard to both sets of bank records. The stated purpose of the timing requirement in Rule 902(11) is to allow sufficient time for the adverse party to challenge the evidence. Tenn. R. Evid. 902(11). Here, that purpose was not frustrated. Regions Bank originally obtained each set of bank records through discovery in 2007. The Bank of America records were authenticated by custodial affidavits dated February 22, 2007, and February 27, 2007. The First Tennessee Bank records were authenticated by custodial affidavit dated June 14, 2007. Apparently, at some point during the litigation, Appellants switched attorneys and the affidavits authenticating the bank records was not transferred to their new attorney. The missing Bank of America affidavit came to light during an exchange between the parties' attorneys at the August 20, 2012, deposition of Kimberlee Williams. Four days later, counsel for Regions Bank sent a new affidavit authenticating the Bank of America records. Though the replacement affidavit was sent several days before trial, because the records for both bank accounts were initially obtained in discovery and authenticated in 2007, the trial court did not abuse its discretion in admitting the bank records.

Appellants contend that the trial court erred by admitting People's Choice's business records into evidence though Regions Bank did not call any qualified witness to lay the foundation as required by Tennessee Rule of Evidence 803(6). Normally, Rule 803(6) requires that business records be authenticated by a custodian or other qualified witness or by certification. However, parties may eliminate the need for either method of authentication by stipulating that records are authentic. *See Tire Shredders, Inc. v. ERM-North Central, Inc.*, 15 S.W.3d 849, 862 (Tenn. Ct. App. 1999). Here, Appellants turned over the records during discovery and represented at that time that they were the People's Choice business records related to the fraudulent loans. Appellants admittedly stipulated that the records were authentic, yet objected to their admission as hearsay. Because the records were stipulated by the parties to be authentic, Regions Bank was not required to call a witness to lay their foundation. We find no abuse of discretion in the trial court's admission of the People's Choice business records.

Appellants' final evidentiary argument challenges the qualifications of Regions Bank expert witness R.A. Wilson. Mr. Wilson reviewed bank records of Williams and People's Choice and testified regarding the unusual spike in large deposits and withdrawals from the accounts around August 2006 when the scheme with Parsley was carried out. Appellants contend that Mr. Wilson's testimony should be excluded because he testified that he was not familiar with intermediate balance doctrine and did not testify that he had formal training as an accountant, forensic accountant, or financial examiner. Appellants' argument is without merit.

Generally, questions regarding the admissibility, qualifications, relevancy, and competency of expert testimony are left to the discretion of the trial court. *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 263 (Tenn. 1997). It is undisputed in this case that Mr. Wilson has a degree in Criminal Justice, a Master of Science degree in Economic Crime Management, and has been a certified fraud examiner and a licensed private investigator for over twenty years. Additionally, the parties do not dispute that Mr. Wilson teaches graduate level courses on white collar crime and fraud management at Utica College in New York. Notably, Appellants did not offer any evidence that the intermediate

balance doctrine was in any way applicable to this case. Based on the foregoing, we find no error in the trial court's determination that Mr. Wilson was qualified to testify regarding Appellants' banking activity.

### *Conspiracy to Defraud*

Next, Appellants contend that the evidence presented at trial does not support the trial court's conclusion that Parsley and Williams conspired or had a tacit agreement to defraud Regions Bank. In *Brown v. Birman Managed Care, Inc.*, the Tennessee Supreme Court discussed the common law action of conspiracy to defraud:

> This tort is defined as a "combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means." Each conspirator must have the intent to accomplish this common purpose, and each must know of the other's intent. The agreement "need not be formal, the understanding may be a tacit one, and it is not essential that each conspirator have knowledge of the details of the conspiracy." Finally, "it is [a] basic principle that each conspirator is responsible for everything done by his confederate which the execution of the common design makes probable as a consequence"; in other words, each conspirator is liable for the damage caused by the other.

*Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 67 (Tenn. 2001) (citations omitted).

Here, the actions of Williams and Parsley clearly constituted a conspiracy to defraud Regions Bank. Williams was in constant contact with Parsley throughout August 2006, imploring her to push the loans through. In return for getting loans approved, Williams paid Parsley at least $14,000. Parsley testified that Williams knew she was overriding Regions Bank's automated loan approval system, which was initially rejecting the loans. The parties stipulated at trial that bribing a bank officer with the intent to influence any business or transaction of the bank constitutes a federal crime. *See* 18 U.S.C.A. § 215. Based on the foregoing facts and others in the record, we find no error in the trial court's conclusion that Williams and Parsley engaged in a scheme to defraud Regions Bank.

### *Damages*

Having determined that the trial court did not err its admission of evidence or in finding that Williams and Parsley conspired to defraud Regions Bank, we now address Appellants' issues with respect to damages. "The proper measure of damages for fraud is that the injured party should be compensated for actual injuries sustained by placing him or her in the same position he or she would have been had the fraud not occurred." *Harrogate Corp. v. Sys. Sales Corp.*, 915 S.W.2d 812, 817 (Tenn. Ct. App. 1995). Here, Williams and Parsley engaged in a scheme to defraud Regions Bank into making loans of $9,316,218 to automobile purchasers with poor credit. At trial, Regions Bank produced the Regions Loss Chart, which showed that in spite of its efforts to collect on the loans and repossess the vehicles, Regions Bank was still out $5,851,842. Appellants did not produce any

evidence to dispute those losses at trial.

Appellants' first contention with respect to damages is that Regions Bank has not suffered damages as a result of making the loans because many of the internal loan summaries prepared by Parsley represented the car values to be zero. We reject this argument for several reasons. First, Parsley testified that the cars were automatically listed as having zero value on the loan summaries unless she entered a different value, which she declined to do because she was rushed to get the loans approved. Second, even if Parsley had intentionally stated on the loan summaries that the cars had no value, that would not make it so. Third, Parsley's actions in perpetrating a fraud against Regions Bank cannot be attributed to Regions Bank. We find that this argument has no merit.

Next, Appellants contend that the trial court erred in awarding speculative damages to Regions Bank. We reject this argument as well. As we have stated in the past, "speculative damages are prohibited only when the existence, not the amount, of damages is uncertain." *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 703 (Tenn. Ct. App. 1999). "Evidence required to support a claim for damages need only prove the amount of damages with reasonable certainty." *Id.* The exact amount to be awarded is left to the sound discretion of the trier of fact. *Id.* Here, Regions Bank presented evidence in the form of the Regions Loss Chart that shows Williams's and Parsley's scheme resulted in $5,851,842 of losses. Appellants contend that Regions Bank failed to mitigate its damages by exhausting all of its remedies with regard to the customer's promissory notes, however they declined to present proof on that claim at trial. In the absence of any proof to the contrary, we find no error in the trial court's decision to accept Regions Bank's evidence of its damages and order a judgment in that amount.

### *Attorney's Fees*

The final issue before us is Regions Bank's contention that it is entitled to reasonable attorney's fees incurred in defending this appeal pursuant to Tennessee Code Annotated section 27-1-122, which provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122 (2000 & Supp. 2013). Regions Bank contends that this appeal is frivolous and was taken solely for the purpose of harassment and delay.

When interpreting the statute, it is important that we do so strictly so as not to discourage legitimate appeals. *Davis v. Gulf Ins. Grp.*, 546 S.W.2d 583, 586 (Tenn. 1977). "An appeal is deemed frivolous if it is devoid of merit or if it has no reasonable chance of success." *Wakefield v. Longmire*, 54 S.W.3d 300, 304 (Tenn. Ct. App. 2001). Upon careful consideration of the issue, we

do not find that Appellants' appeal is so lacking in merit as to warrant damages for frivolous appeal.

## V. Conclusion

For the reasons set forth herein, we affirm the trial court's judgment. Costs of this appeal are taxed to the appellants, Joseph P. Williams, The People's Choice Auto Sales, LLC, Kimberlee Williams, Alexis Williams, and Chazz Brantley, and their sureties, for which execution may issue if necessary.

 

 

_____
DAVID R. FARMER, JUDGE