IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 16, 2025 Session

## AMONETT'S EAGLE AUCTION & REALTY, LLC v. NORRIS BROS. PROPERTIES, LLC, ET AL.

**Appeal from the Chancery Court for Cumberland County**
**No. 2024-CH-2534          Ronald Thurman, Chancellor**

_____

### No. E2024-01931-COA-R3-CV

_____

In this action between parties to an auction contract, the trial court determined that the defendant property company and its individual members had committed intentional fraud, intentional misrepresentation, fraudulent inducement, and civil conspiracy. The court found that during an auction of the defendants' property, they had bid to increase the price, caused a "shill bidder" to cast bids, and then refused to purchase the property after the defendants' company cast the highest bid. The court additionally found the defendants liable for damages incurred by the plaintiff auction company and awarded to the plaintiff a total judgment in the amount of $91,825.00. The defendants have appealed. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and KRISTI M. DAVIS, J., joined.

Matthew J. McClanahan, Crossville, Tennessee, for the appellants, Norris Bros. Properties, LLC; Jacob Norris, Individually; and Justin Norris, Individually.

William D. Birdwell and Lacey A. Piland, Cookeville, Tennessee, for the appellee, Amonett's Eagle Auction & Realty, LLC.

## OPINION

### I. Factual and Procedural Background

The plaintiff, Amonett's Eagle Auction & Realty, LLC ("Eagle Auction"), filed a complaint in the Cumberland County Chancery Court ("trial court") on June 26, 2024,

naming as defendants Norris Bros. Properties, LLC ("Norris Bros."), and, as individuals, Jacob Norris and Justin Norris. On February 26, 2024, the parties had entered into an "Auction Listing Contract" ("the Contract"), providing that Eagle Auction would auction three parcels of real property ("the Property"), totaling approximately 33.5 acres, owned by Norris Bros. and located in Crossville.[1]

The Contract, which was attached to the complaint and entered as an exhibit at trial, provides that the Property will be sold in an online "absolute" auction ("without reserve") to the "highest bidder subject to the confirmation of seller/courts." The Contract further provides in relevant part:

> The AGENT/AUCTIONEER will receive as commission, payment on the highest and best bid on the REAL ESTATE divided as follows: 0 % paid by SELLER(S), 10% paid by BUYER . . . . In the event the auction is not consummated for any reason or the SELLER(S) rejects the final bid, the SELLER(S) shall owe to the AGENT/AUCTIONEER a minimum fee of $25,000 plus costs incurred under Section II [expenses].

> If any sale or portion of sale should be rejected by the SELLER(S) or not be consummated for any reason, the SELLER(S) agrees to pay said AGENT/AUCTIONEER the minimum auction fee less any commissions collected within fifteen (15) days of auction date. The parties further acknowledge that if said property is thereafter sold within 120 days thereof, the SELLER(S) will pay said AGENT/AUCTIONEER 6 % of the sale price. SELLER(S) promises to pay to the order of Amonett's Eagle Auction & Realty, LLC the sum equivalent as previously stated on or before 15 days with interest accruing at a rate of 12% per annum until principal and interest has been paid in full. In the event any portion of any required payment of principal and/or interest becomes due[] and remains unpaid for as long as thirty (30) days, the AGENT/AUCTIONEER may, in that event, at his option, declare all of the indebtedness outstanding at that time due and payable at once upon demand and proceed to enforce the collection of same. If there is a breach of any terms of this contract, the holder of this contract may employ an attorney or attorneys to protect his rights hereunder and in event of such employment following any breach by the undersigned and to the extent allowed by law, the undersigned shall pay the holder of this note reasonable attorney's fees and expenses incurred by them, whether or not an action is actually by law commenced against the undersigned by reason of the breach. The undersigned also agrees to indemnify the holder of this note,

---

[1] It appears from the property descriptions and the online flyer advertising the auction that the Property is unimproved.

from all loss, damage, and expense including attorney's fees incurred in connection with any suit or proceeding in or to which the holder of this note may be made or become a party for the purpose of protecting or asserting his rights under this contract.

The AGENT/AUCTIONEER shall secure advertising, promotional materials, & services as indicated below with the cost of such to be paid by: _____SELLER(S), __X_AGENT/AUCTIONEER with the cost of advertising not to exceed $TBD. Advertising includes but is not limited or specific to Newspapers, Signs, Handbills, Websites, Emails, Radio, TV and any Administrative, Production and Promotion Fees. Labor costs for prep of real and personal property for auction to be paid by the _X_SELLER(S), by the _____AGENT/AUCTIONEER not to exceed $_____ or at the _X__SELLER'S discretion. The AGENT/AUCTIONEER shall furnish the services of auctioneer, clerk and all other personnel necessary to conduct a public auction. SURVEY expenses if done shall be paid by SELLER(S) including tract layouts, minor or major plats, zoning, recording and any engineering expense. The AGENT/AUCTIONEER is hereby granted the authority to make necessary arrangements and contract for said services on behalf of the SELLER(S).

* * *

The AGENT/AUCTIONEER, subsequent to the conclusion of the sale after all check have been cleared by the bank and credited to AGENT/AUCTIONEER company's escrow account, shall account for and pay over to the SELLER(S) and ATTORNEY(S) the proceeds of the sale less the agent's retainer, commission, and other items of expense to be borne by the SELLER(S) and shall [] furnish to the SELLER(S) the closing statements as required by law. The AGENT/AUCTIONEER does not guarantee sale price or a sale and is not responsible in the event the BUYER(S) and SELLER(S) fail to live up to their agreements.

SELLER(S) agrees to pay all reasonable attorneys' fees resulting from any breach of the terms and conditions hereof pursuant to contract law of the state in which auction is conducted. The sellers agree that any lawsuits filed with or against the AGENT/AUCTIONEER are to be filed in city of the nearest local office.

The Contract also included a handwritten "Other Condition," providing: "Auctioneer shall only retain 7% of the 10% Buyer's Premium & Seller shall w/hold 3%. In the event a Partner purchases any property, they shall only pay 5% of the Buyer's Prem."

In its complaint, Eagle Auction alleged that Jacob Norris and Justin Norris had conspired to bid on the Property themselves in an effort to raise the bidding price and with no intent to purchase the Property. Eagle Auction also alleged that "[a]fter the Auction, the Defendants told [Eagle Auction] that one of the bidders was a woman who agreed to cast bids with no intention to purchase the real property in order to increase the sale price." Eagle Auction asserted claims of (1) breach of contract, (2) tortious interference with a business relationship, (3) tortious interference with a contract, (4) constructive fraud, (5) intentional misrepresentation and intentional fraud, (5) negligent misrepresentation, (6) fraudulent inducement, and (7) civil conspiracy. Eagle Auction requested a judgment in the amount of $65,125.00, plus interest accrued since the auction, as "the amount of the unpaid labor and materials furnished to the real property and improvements thereto by [Eagle Auction]"; attorney's fees, legal expenses, and costs; and treble damages pursuant to the claim of tortious interference with a contract under Tennessee Code Annotated § 47-50-109. Eagle Auction also filed a notice of lien *lis pendens* on the Property, pursuant to Tennessee Code Annotated § 62-19-108, in the amount of $65,125.00, plus accrued interest.[2]

On August 21, 2024, Eagle Auction filed a motion for default judgment. Defendants then filed separate answers on September 16, 2024, denying the substantive allegations regarding conspiracy and fraud. Defendants each respectively admitted that they had "sought to increase the bid price on the property to protect it from going for too little." They averred that they had attempted to remit $25,000.00 to Eagle Auction. Defendants each asserted the affirmative defenses of failure to state a claim upon which relief could be granted and unjust enrichment. Norris Bros. and Justin Norris also included an "affirmative defense" stating that neither brother had been the highest bidder because a "Tennessee Limited Liability Company" had been.

The trial court conducted a bench trial on November 6, 2024. Eagle Auction presented direct testimony from Lee J. Amonett, a member of Eagle Auction, and adverse direct testimony from Jacob Norris. Justin Norris did not appear for trial. Exhibits

_____

[2] Tennessee Code Annotated § 62-19-108(a) (West August 11, 2009, to current) provides in pertinent part:

> [A]ny auctioneer who performs auctioneering services and is subsequently denied payment for a commission or fee for services performed shall have a lien for the work upon the property that the auctioneer was hired to auction; provided, however, that the lien shall only extend to property that is owned by the person who has denied payment for a commission or fee for services performed by the auctioneer.

presented included (1) the Contract; (2) an advertising flyer for the auction; (3) documentation of Eagle Auction's expenses related to the auction, including attorney's fees; (4) bidding information regarding the highest bidder; (5) online bidding information posted to those interested in the auction; and (6) an unpaid invoice for purchase of the Property in the amount of $1,433,850.00.

On appeal, Defendants have not provided a trial transcript. The trial court approved a statement of the evidence filed by Eagle Auction that reiterates the trial court's findings of fact in its final order entered on December 16, 2024. In its order, the court determined the terms of the Contract to be "clear and unambiguous." The court expressly found Mr. Amonett's testimony to be credible and Jacob Norris's testimony to be not credible. The court specifically found that "Jacob Norris, as Member, on behalf of Norris Bros. Properties, cast bids at the Auction with the intention to increase the bid price on the property to protect the property from selling for too little" and that Jacob Norris had arranged for a shill bidder to cast bids during the auction. The court further found that "at the conclusion of the absolute auction, Norris Bros. Properties cast the high bid for the land in the amount of $1,435,850.00" and that Defendants then "refused to close the absolute auction transaction." The court concluded that Defendants had made knowingly false representations "to induce Amonett to enter the Auction Agreement" and that Eagle Auction "would not have contracted with Norris Bros. Properties to sell the land at absolute auction had it known that the representations were false."

The trial court determined that "[t]he actions of Norris Bros. Properties to cast bids on its own property with the intent to increase the bid price for the land and to cause a Shill Bidder to cast bids to increase the bid price for the land" had: (1) "resulted in a severe chilling of the absolute auction," (2) "constitute[d] an intentional interference with the absolute auction being conducted by [Eagle Auction]," (3) "prevented a *bona fide* bidder from casting the high bid for the absolute auction," (4) "constitute[d] fraud," and (5) caused Eagle Auction to "suffer[] damage caused by the fraudulent acts of Norris Bros. Properties and Jacob Norris." The court further found that Eagle Auction was not aware of Defendants' fraudulent acts until after the auction and did not breach the Contract.

The trial court concluded that Defendants "committed acts of fraud which constitute Intentional Misrepresentation, Intentional Fraud, Fraudulent Inducement and Civil Conspiracy that caused damage to [Eagle Auction]." The court awarded to Eagle Auction a total judgment in the amount of $91,825.00 "as compensation for the damage, including the lost value of [Eagle Auction's] time, and reimbursement of sale expenses, attorney fees and legal expenses."[3]

---

[3] The trial court did not address Eagle Auction's request for statutory treble damages related to tortious interference with a contract.

In its order, the trial court directed that Eagle Auction's lien would continue to encumber the Property. The court also ordered a "Writ of Execution and Order of Sale commanding the Clerk & Master for Cumberland County, Tennessee," "as special master, to attach [the Property], levy execution upon the Lien, sell the Subject Property pursuant to the requirements of law." Defendants timely appealed.

## II. Issues Presented

Defendants present two issues on appeal, which we have restated slightly:

1.      Whether the trial court erred in its interpretation of the parties' contract when the court awarded to Eagle Auction damages in the amount of $91,825.00.

2.      Whether the parties' contract is void as a matter of public policy.

## III. Standard of Review

Our review of the trial court's judgment following a non-jury trial is *de novo* upon the record with a presumption of correctness as to the trial court's findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Kelly v. Kelly*, 445 S.W.3d 685, 691-92 (Tenn. 2014). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

We review the trial court's conclusions of law, including its interpretation of a written agreement, *de novo* with no presumption of correctness. *See Ray Bell Constr. Co., Inc. v. State, Tenn. Dep't of Transp.*, 356 S.W.3d 384, 386 (Tenn. 2011); *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009). Although "the amount of damages to be awarded in a particular case is essentially a fact question," "the choice of the proper measure of damages is a question of law . . . ." *GSB Contractors, Inc. v. Hess*, 179 S.W.3d 535, 541 (Tenn. Ct. App. 2005) (quoting *Beaty v. McGraw*, 15 S.W.3d 819, 827 (Tenn. Ct. App. 1998)).

## IV. Damages

Defendants contend that the trial court erred by awarding to Eagle Auction a judgment in the amount of $91,825.00. They argue that because the Contract provided for

a minimum $25,000.00 payment to Eagle Auction if the sale of the Property were not consummated, the judgment should be limited to the "bargained for fee of $25,000" plus Eagle Auction's expenses in conducting the auction, which the trial court found to be $16,550.00, for a total amount of $41,550.00. Eagle Auction responds that the trial court awarded damages based upon a finding of fraud, not breach of contract, and that the court properly sought to place Eagle Auction as close as possible to the position it would have been in if Defendants had not committed fraud. Upon careful review, we agree that the trial court properly awarded damages based upon a finding of fraud.

In its final order, the trial court delineated the damages awarded as follows:

> [Eagle Auction] incurred expenses in the amount of Sixteen Thousand Five Hundred Fifty Dollars, ($16,550.00) that were necessary to prepare the land for sale, advertise the auction to the public, pay survey expenses and labor costs. The Court finds the amount of expenses to be reasonable.

> [Eagle Auction] incurred reasonable attorney fees and legal expenses in the amount of Ten Thousand Dollars ($10,000.00) in filing the above action, in response to a breach and to enforce the terms of the Auction Contract.

> [Eagle Auction] devoted time and performed actions necessary to promote and conduct the absolute auction pursuant to the terms of the Auction Contract for which [Eagle Auction] shall not receive compensation due to the fraudulent acts of Norris Bros. Properties and Jacob Norris. This Court finds the value of said time to be $65,275.00.

Defendants take issue with the difference between the $25,000.00 contractual minimum fee due if no sale occurred and the $65,275.00 found by the court to be Eagle Auction's actual loss, plus the $10,000.00 award of attorney's fees. Defendants argue that the trial court misinterpreted the Contract because the following provision should have settled the matter of what Defendants owed to Eagle Auction in the event that a sale did not take place:

> In the event the auction is not consummated for any reason or the SELLER(S) rejects the final bid, the SELLER(S) shall owe to the AGENT/AUCTIONEER a minimum fee of $25,000 plus costs incurred under Section II [expenses].

However, Defendants fail to address the trial court's determination that they "committed acts of fraud which constitute Intentional Misrepresentation, Intentional Fraud, Fraudulent Inducement and Civil Conspiracy that caused damage to [Eagle Auction]."

Rather than a simple non-consummation of the auction sale, the trial court found that the auction sale failed as a direct result of Defendants' fraudulent acts. "The proper measure of damages for fraud is that the injured party should be compensated for actual injuries sustained by placing him or her in the same position he or she would have been had the fraud not occurred." *Harrogate Corp. v. Sys. Sales Corp.*, 915 S.W.2d 812, 817 (Tenn. Ct. App. 1995). Our Supreme Court has held that in Tennessee, the economic loss doctrine, which "precludes a contracting party who suffers only economic losses from recovering damages in tort," "only applies in products liability cases and should not be extended to other claims." *Commercial Painting Co. v. Weitz Co.*, 676 S.W.3d 527, 528-29 (Tenn. 2023). As the Court explained:

> [C]ourts adopting a broad fraud exception to the economic loss doctrine have stated that "the parties to a contract 'create a mini-universe for themselves, in which each voluntarily chooses his contracting partner, each trusts the other's willingness to keep his word and honor his commitments, and in which they define their respective obligations, rewards and risks.'" *Milan* [*Supply Chain Solutions v. Navistar, Inc.*], 627 S.W.3d [125,] 147 [(Tenn. 2021)] (quoting *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 22 Cal. Rptr. 3d 352, 102 P.3d 268, 275 (Cal. 2004)). In this scenario, it is the function of contract law "to enforce only such obligations as each party voluntarily assumed, and to give [each party] only such benefits as [that party] expected to receive." *Id.* (quoting *Robinson Helicopter*, 22 Cal. Rptr. 3d 352, 102 P.3d at 275) (alterations in original). But "this universe of expectations does not merit protecting if one party commits fraud to induce the contract because '[a] party to a contract cannot rationally calculate the possibility that the other party will deliberately misrepresent terms critical to the contract.'" *Id.* (quoting *Robinson Helicopter*, 22 Cal. Rptr. 3d 352, 102 P.3d at 275).
>
> One party need not have to consider another party's fraud among the potential risks and costs when negotiating a contract in good faith. Parties to a contract—even sophisticated commercial parties—"cannot, and should not, be expected to anticipate fraud and dishonesty in every transaction." *Id.* (quoting *Robinson Helicopter*, 22 Cal. Rptr. 3d 352, 102 P.3d at 277). To hold otherwise would increase the risk of fostering a legal system tending to place the risk of fraudulent behavior on the defrauded party rather than the perpetrator. <u>Contracting parties in Tennessee . . . should not have to factor into their decision to enter a contract the potential for fraud or another party's dishonesty</u>.

*Id.* at 539 (emphasis added).

Defendants have not challenged the trial court's findings regarding fraud. Notably, Defendants have not provided a transcript of the bench trial, and Eagle Auction's statement of the evidence was approved by the trial court. As this Court has previously clarified, "it is the appellant's responsibility to provide this Court with a sufficient appellate record with which this Court can conduct a proper review of the trial court proceedings." *Dishon v. Dishon*, No. M2017-01378-COA-R3-CV, 2018 WL 3493159, at *9 (Tenn. Ct. App. July 20, 2018). Upon thorough review of the technical record, exhibits, and statement of the evidence before us, and in consideration of the absence of a transcript, we determine that the trial court's findings regarding fraud are well supported. *See Lallemand v. Smith*, 667 S.W.2d 85, 88 (Tenn. Ct. App. 1983) ("[I]n the absence of a transcript of the evidence, it is well settled that the "findings of fact made by the trial court are supported by the evidence heard in that court and must be accepted as true by the appellate court.") (quoting *J.C. Bradford & Co. v. Martin Constr. Co.*, 576 S.W.2d 586, 587 (Tenn. 1979)). We therefore conclude that the trial court properly awarded damages to Eagle Auction for its actual injuries resulting from Defendants' fraudulent acts. *See Harrogate Corp.*, 915 S.W.2d at 817.

Regarding the trial court's award to Eagle Auction of $10,000.00 in attorney's fees, Defendants acknowledge that they agreed "to pay all reasonable attorneys' fees resulting from any breach of the terms and conditions" in the Contract. Defendants do not challenge the court's decision to award attorney's fees. Instead, they argue that the court made insufficient findings of fact as to the reasonableness of the fees. They ask this Court to remand for further findings of fact and conclusions of law pursuant to Tennessee Rule of Civil Procedure 52.01.

Our review of a trial court's determination of reasonable attorney's fees is "a discretionary inquiry." *Killingsworth v. Ted Russell Ford, Inc.*, 104 S.W.3d 530, 534 (Tenn. Ct. App. 2002). As this Court has explained:

> There is no fixed mathematical rule in this jurisdiction for determining reasonable fees and costs. This being the case, an appellate court will normally defer to a trial court's award of attorney's fees unless there is "a showing of an abuse of [the trial court's] discretion." *Threadgill v. Threadgill*, 740 S.W.2d 419, 426 (Tenn. Ct. App. 1987); *see also Sanders* [*v. Gray*, 989 S.W.2d [343,] 345 [(Tenn. Ct. App. 1998)]. In evaluating the lower court's exercise of its discretion in a non-jury setting, we review its award *de novo*. We are not authorized to disturb the trial court's award unless we find that the evidence preponderates against the trial court's factual findings. Tenn. R. App. P. 13(d).

*Id.* Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.5(a) lists "factors to be considered in determining the reasonableness of a fee."[4] "In terms of procedure, the trial court should develop an evidentiary record, make findings concerning each of the factors, and then determine a reasonable fee that 'depend[s] upon the particular circumstances of the individual case.'" *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 185-86 (Tenn. 2011) (quoting *White v. McBride*, 937 S.W.2d 796, 800 (Tenn. 1996)).

In this case, the trial court found that Eagle Auction "incurred reasonable attorney fees and legal expenses in the amount of Ten Thousand Dollars ($10,000.00) in filing the above action, in response to a breach and to enforce the terms of the Auction Contract." The court did not make specific findings of fact regarding the reasonableness of the fees.

During trial, Eagle Auction presented an exhibit documenting its expenses related to the auction and its attorney's fees related to this action. The exhibit included invoices from Eagle Auction's counsel with individual services and associated fees on each invoice. Neither the trial court's order nor the statement of the evidence indicates that Eagle Auction's counsel testified regarding the reasonableness of their services. However, there is also no indication that Defendants ever objected to the exhibit or to the reasonableness of the fees before the trial court.

We recognize that "[t]o *enable appellate review*, trial courts should clearly and thoroughly explain the particular circumstances and factors supporting their determination of a reasonable fee in a given case." *Blount v. Blount*, 720 S.W.3d 295, 354 (Tenn. Ct.

---

[4] The list of factors to be considered when determining the reasonableness of attorney's fees include:

(1)   the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2)   the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3)   the fee customarily charged in the locality for similar legal services;
(4)   the amount involved and the results obtained;
(5)   the time limitations imposed by the client or by the circumstances;
(6)   the nature and length of the professional relationship with the client;
(7)   the experience, reputation, and ability of the lawyer or lawyers performing the services;
(8)   whether the fee is fixed or contingent;
(9)   prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and
(10)  whether the fee agreement is in writing.

Tenn. Sup. Ct. R. 8, RPC 1.5(a).

App. 2024) (quoting *Wright*, 337 S.W.3d at 186) (emphasis in *Blount*). However, "this Court has also held that a party waives the issue of the reasonableness of an opposing party's attorney fee by failing to raise the issue before the trial court." *Blount*, 720 S.W.3d at 354 (example citations omitted). Here, given that Eagle Auction presented its exhibit delineating attorney's fees during trial and yet we have no record of Defendants objecting to the reasonableness of those fees during trial, we determine that Defendants have waived the issue of the reasonableness of the attorney's fees. *See, e.g.*, *Blount*, 720 S.W.3d at 355 (determining that the appellant had waived the issue of the reasonableness of the attorney's fees by failing to object to the reasonableness of the fees requested in the trial court).

For the reasons stated above, we affirm the trial court's award to Eagle Auction of $91,825.00 in total damages, inclusive of $10,000.00 in attorney's fees.

## V. Public Policy

Defendants posit that the Contract should be deemed unenforceable because under the handwritten "Other Condition," which provided a discount to a partner in the Defendants' company who bid on the Property, Defendants were allowed to bid during the absolute auction. Defendants argue that this provision conflicted with the legal definition of an absolute auction, which precludes a seller from bidding. *See* Tenn. Comp. R. & Regs. 0160-01-.19(1). Eagle Auction asserts that Defendants waived this issue by failing to raise it in the trial court. Defendants have not filed a reply brief on appeal to counter Eagle Auction's waiver argument.

We find no indication in the record that Defendants raised this public policy issue in the trial court. This Court is an appellate court, and we are thus "limited in authority to the adjudication of issues that are presented and decided in the trial courts[.]" *In re Estate of Boykin*, 295 S.W.3d 632, 636 (Tenn. Ct. App. 2008) (quoting *Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976)). Therefore, we determine that Defendants have waived their public policy issue.

## VI. Conclusion

For the foregoing reasons, we affirm the trial court's judgment in all respects. We remand this matter to the trial court for collection of costs assessed below. Costs on appeal are assessed to the appellants, Norris Bros. Properties, LLC; Jacob Norris, Individually; and Justin Norris, Individually.

s/ Thomas R. Frierson, II_____
THOMAS R. FRIERSON, II, JUDGE